No. 29,360.

HARRIET L. DANIELS, *Appellee,* v. W. E. CRAIGLOW, H. E. TAVENDER and L. E. MORRIS, *Appellants.*

(292 Pac. 771.)

Opinion filed November 8, 1930.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald,* all of Wichita, for the appellants.

*O. A. Keach,* of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover money paid for speculative securities sold in violation of the blue-sky law. Plaintiff prevailed, and defendants appeal.

The Wichita Duntile Company was a corporation organized in May, 1925, with a capital stock of $50,000, divided into 275 common shares and 225 preferred shares of $100 each. The subscribing stockholders were H. J. Dunn, Harry Farmer, H. Ernest Tavender, Harry F. DeWolf and Theo. Smith, each of whom subscribed one share. The same persons were directors, and on May 29, 1925, they elected the following officers: Dunn, president; Farmer, vice president; DeWolf, secretary; Tavender, treasurer; and Smith, general

manager.  W. E. Craiglow and L. E. Morris became interested in the company, purchased stock, and at a meeting held the night of February 2, 1926, the board of directors was reorganized.  Dunn resigned, and Craiglow was elected director and president in Dunn's place.  Farmer resigned as vice president and director, and DeWolf resigned as secretary.  The vacancies were filled by electing Morris director and secretary, and Smith vice president.

Miss Harriet L. Daniels, the plaintiff, was a school teacher in Wichita, and Smith recommended the company's stock to her as an investment.  Smith named as heavy investors persons whom she knew, and told her investors were protected by the blue-sky law. Depending on what Smith said, plaintiff decided to purchase stock of the company, and attended the meeting on February 2.  After the resignations and elections which have been referred to had occurred, and Craiglow had taken the chair as president, plaintiff wrote her check for $500, payable to the Wichita Duntile Company, for five shares of preferred stock.  The check was handed to Smith, plaintiff saying, "This is with the understanding that you gave me about this company."  Smith replied: "It is.  Your stock will be made out.  Mr. Craiglow will make out your stock, and it will be delivered to you."  In due time a certificate for five shares of preferred stock, dated February 2, 1926, signed by Craiglow as president and Morris as secretary, and bearing the corporate seal, was mailed to plaintiff.  It seems a share of common stock went with purchase of a share of preferred stock, and a separate certificate for five shares of common stock accompanied the certificate for preferred stock.  In April, 1926, plaintiff gave her check to the company for $350, and received certificates, dated April 10, for five shares of preferred stock and five shares of common stock, signed and sealed in the same manner as the certificates issued February 2. The checks which plaintiff gave were deposited by the treasurer, Tavender, to the credit of the company in the Fourth National Bank of Wichita, and the proceeds were paid out for corporate purposes by checks drawn by Craiglow as president and Tavender as treasurer.  The company was not financially successful, its assets were disposed of to pay debts, and the stock proved to be valueless.

Plaintiff sued Craiglow, Tavender and Morris.  It is not disputed that the shares were speculative securities, and it is admitted that no permit authorizing sale of the shares was applied for or issued as the blue-sky law required.  The statute, subsequently revised, reads as follows:

"It shall be unlawful hereafter for any person, copartnership, association or corporation ⁚ . . . , either as principal or through brokers or agents, to sell or offer for sale . . . any speculative securities in this state unless . . ." (R. S. 17-1202.)

Violation of the statute was punishable by fine or by imprisonment. The statute was interpreted in the case of *Wigington v. Mid-Continent Royalty Co.*, 130 Kan. 785, 288 Pac. 749. It was held the statute was one to prevent fraud, and should be liberally interpreted when operating against the offense sought to be prohibited. In this instance the statute is invoked respecting transactions wherein plaintiff parted with her money, and the statute is to be liberally interpreted.

The company sold shares of its stock to plaintiff. While Smith conducted the negotiations, he was not seller. The shares were unsubscribed shares, nobody had power to pass title to them except the directors acting as managers of the affairs of the corporation (R. S. 17-608), and the corporation sold the shares as principal acting through the directors as agents.

None of the defendants got any of plaintiff's money for himself, but plaintiff's money was procured for the company. Defendants were the instruments in the unlawful transactions whereby plaintiff lost her money, and she was privileged to look to them for reparation. Their liability is predicated on their wrongful conduct resulting in injury to plaintiff.

Plaintiff did not prove that defendants in fact knew no permit had been applied for or issued. Such proof was not necessary. Defendants were bound to know whether a permit had been obtained.

"If he participated in the making of the sale he could not be exonerated from even criminal liability merely because he did not know that no permit to sell had been obtained. If an agent in making or helping to make an illegal sale were protected from punishment by lack of personal knowledge of his principal's want of legal authority, the evasion of the statute would be so easy as to deprive it of much of its practical effect. An employee who makes a sale of intoxicating liquor, illegal because his employer has no license, cannot make a successful defense on the ground that he did not know such a license had not been granted." (*Weisendanger v. Lind,* 114 Kan. 523, 527, 220 Pac. 263.)

Tavender received and deposited plaintiff's check for the price of the shares, and Craiglow and Morris issued the share certificates. Defendants contend they were not instrumental in making the sale, and an officer or director of a corporation is not subject to liability

for sale of speculative securities in violation of the blue-sky law unless he actively participated in making the sale.

It is true that a person and a corporation may consent to creation of the relation of shareholder without payment of price or issuance of a certificate; but payment of price and issuance of a share certificate are normal concomitants of a sale of shares, are generally regarded by those whom the blue-sky law is designed to protect as characteristic features of a sale, and were so regarded in this instance. Plaintiff concluded her negotiations by giving her check for the price of the shares she was purchasing. When she did so she was assured her certificates would be made out and delivered to her, and the certificates were issued and delivered to her. Plaintiff was a purchaser, as distinguished from a subscriber. A subscriber may be sued on his subscription without tender of a certificate. Suit for price may not be maintained against a purchaser without tender of a certificate. (14 C. J. 508, 509.) Under the statute the shares were personal property. (R. S. 17-604.) Plaintiff could not enjoy to the full extent all her privileges as a shareholder until she received a share certificate. The share certificates she did receive were the tangible evidence of what she bought, and her transactions with the company took the form of payment of price followed by symbolical delivery. The treasurer received the money, and the president and secretary made the delivery. Besides that, by authenticating and issuing the share certificates, the president and secretary represented to plaintiff that the sale was not tainted with illegality on account of omission to procure a blue-sky permit. (See *Windram v. French*, 151 Mass. 547, 550.)

The court concludes that whether or not what defendants did constituted active participation in the sale, their conduct bore such relation to the unlawful sale that they must restore to plaintiff the price she paid for the shares sold to her. There is no doubt about Tavender's liability, and as bearing on the subject of liability of the president and secretary, counsel for plaintiff cites the case of *Smith v. Crawford*, 228 Ky. 420. The syllabus reads:

"Officer and director of corporation signing stock certificate on sale by corporation of stock in violation of blue-sky law . . . held liable to purchaser thereof for amount of purchase price . . . irrespective of whether he personally participated in negotiating the sale." (¶ 1.)

The judgment of the district court is affirmed.

JOCHEMS, J., not participating.