No. 61,573

W. W. TAYLOR, MRS. W. W. TAYLOR or A. GENEVIEVE TAYLOR,
MICHAEL C. TAYLOR, JOHN S. TAYLOR, DAVID J. TAYLOR, and
MARK B. TAYLOR, A PARTNERSHIP KNOWN AS TAYLOR FAMILY REAL
ESTATE TRUST, *Appellants*, v. PERDITION MINERALS GROUP, LTD.,
HENRY N. MULVIHILL, MARVIN ECHOLS, JACK GRIGGS, CHARLES
HARRIS, LEO MEEKER, and ROBERT E. FONDREN, *Appellees.*

(766 P.2d 805)

Opinion filed
December 14, 1988.

*Donald W. Bostwick,* of Adams, Jones, Robinson & Malone, Chartered, of Wichita, argued the cause, and *Cynthia S. Dunne,* of the same firm, was with him on the brief for appellant.

*H. E. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *Kelly J. Rundell,* of the same firm, was on the brief for appellee Harris.

*Tom R. Smith,* of Smith & Miles, Chartered, of Liberal, argued the cause and was on the brief for appellees Meeker and Echols.

The opinion of the court was delivered by

Six, J.: This first impression statutory construction case involves the interpretation of K.S.A. 1987 Supp. 17-1268(b) of the Kansas Securities Act. Must a director have materially aided in the sale of unregistered securities to be liable for their illegal sale?

The plaintiffs, W. W. Taylor, Mrs. W. W. Taylor or A. Genevieve Taylor, Michael C. Taylor, John S. Taylor, David J. Taylor, and Mark B. Taylor, a partnership known as Taylor Family Real Estate Trust, (Taylors) appeal from a summary judgment in favor of the director defendants Charles Harris, Leo L. Meeker, Marvin Echols, and Jack Griggs.

The trial court found that, under K.S.A. 1987 Supp. 17-1268(b), a director of a corporation is not liable for the illegal sale of the corporation's securities unless the plaintiff can show that the director materially aided in the sale. The trial court ruled that the four director defendants did not materially aid in the securities sale to the Taylors.

We disagree with the trial court's analysis.

The parties by agreement have characterized Harris as a representative director defendant. Rulings as to Harris apply equally to the other director defendants, Meeker, Echols, and Griggs.

The questions to be decided are:

(1) Does K.S.A. 1987 Supp. 17-1268(b) require that directors must materially aid in the sale of a corporation's securities to be held liable for the sale?

(2) Did the director defendants materially aid in the securities sale to the plaintiffs?

(3) Did the director defendants show that they did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist?

We hold that K.S.A. 1987 Supp. 17-1268(b) is substantially similar to § 410(b) of the Uniform Securities Act, 7B U.L.A. 643 (1958). Strict liability is imposed on partners, officers, and directors to purchasers of unregistered securities sold in violation of the statute regardless of whether the partner, officer, or director materially aided in the sale unless he or she proves that he or she could not reasonably have had knowledge of the facts by reason of which liability is alleged to exist.

### 1. The Facts of the Investment

In early November of 1981, W. W. Taylor discussed an oil and gas exploration investment, Perdition Minerals Group, Ltd., (Perdition) with his neighbor, Donald Schrag. Taylor became interested and the two men placed a call to Bob Fondren, a securities broker, who had previously supplied Schrag with information on the corporation. Taylor spoke with Fondren who told him: (1) The stock was worth $1.34 a share and would be worth more soon; (2) the company had a lot of oil and gas in Montana; (3) the company was going to do an audit, and (4) the company was preparing to go public. Schrag indicated to Taylor that he was going to buy $200,000 worth of stock at $.50 a share.

Soon after Taylor's discussions with Schrag and Fondren, Schrag arranged a meeting between Taylor and Henry Mulvihill, who was Perdition's chief executive officer. Taylor was supplied with a financial statement and Mulvihill's personal resume. Mulvihill also described the production and value of the acreage held by Perdition in Montana. Taylor did not ask to see any drilling reports or geographical information. Mulvihill told Taylor that several hundred thousand dollars was needed to meet current drilling and lease expenses. Mulvihill gave Taylor a list of references, several of whom Taylor knew, including defendant Charles Harris. Taylor did not contact any of the references. Taylor told Mulvihill that he would purchase 400,000 shares of Perdition for $200,000; $100,000 on behalf of himself and his wife, and $100,000 on behalf of his children.

Taylor attended a Perdition shareholders' meeting on November 20, 1981. He met privately with Mulvihill prior to the meeting. At this private meeting, Mulvihill reassured Taylor that the stock was worth more than $1.34 a share and that he was going to do an audit. There is no evidence in the record indicating that any directors or shareholders of Perdition, other than Mulvihill, Schrag, and Fondren, made any representations to Taylor or were in any way involved with the sale of stock to him.

At the November 20, 1981, shareholders' meeting, Mulvihill introduced Taylor as a potential Perdition investor. No one inquired as to the circumstances surrounding the issuance of the stock. Defendant Harris was present at the meeting and moved to hire Elmer Fox to audit the company. Harris said that he made the motion based on a recommendation by Mulvihill. Taylor

testified at his deposition that, prior to the shareholders' meeting, Mulvihill had never given any indication that Harris was Perdition's attorney.

Mulvihill, for tax purposes, had incorporated Perdition in Nevada. Mulvihill and Harris were close friends. In November of 1981, Harris agreed to purchase 2,500 shares of Perdition. Harris is a Wichita attorney. He testified at his deposition that the only legal work he had done on behalf of Perdition was to draw up an employment agreement between Perdition and Milan Ayers. Ayers managed the Montana properties. Mulvihill retained a Denver law firm which specializes in securities and oil and gas law to handle the corporation's other legal matters.

At the time Harris bought his shares, Mulvihill was the sole director and the parent of Perdition. In January 1981, a shareholders' meeting was held at which defendants Marvin Echols, Jack Griggs, Charles Harris, Leo Meeker, and Henry Mulvihill were elected directors. With the exception of Jack Griggs, all the director defendants invested money in Perdition and lost their investment when Perdition became insolvent. The shareholders voted to increase the authorized common stock from 500,000 shares to 4,000,000 shares and to split the outstanding 500,000 shares four for one, into 2,000,000 shares.

Early in 1982, when no audit was forthcoming, Taylor became concerned about his investment. Mulvihill assured Taylor that the audit was being done. Taylor then spoke to a friend who did business with the Elmer Fox accounting firm and asked him to check into Perdition. His friend told him: (1) Fox had no business relationship with Perdition, (2) the SEC had been investigating the Montana properties, and (3) Perdition's current financial statements did not reflect Taylor's $200,000 investment. The 400,000 shares of stock of Perdition purchased by the Taylors were never registered in accordance with K.S.A. 17-1256, -1257, or -1258. The sale of these 400,000 shares of stock of Perdition was not the sale of an exempt security under K.S.A. 1987 Supp. 17-1261, nor was it an exempt transaction under K.S.A. 1987 Supp. 17-1262.

The Taylors filed the instant lawsuit against Perdition, Mulvihill, Fondren, and the director defendants to rescind the purchase and recover the purchase price based upon violations of registration and misrepresentations under the Kansas Securities

Act. The petition alleged that the Perdition stock was not registered pursuant to Kansas law and that Mulvihill and Fondren made misleading and false statements upon which Taylor relied in purchasing the stock.

The trial court entered summary judgment in favor of the director defendants Harris, Echols, Meeker, and Griggs, finding that, under K.S.A. 1987 Supp. 17-1268(b), an innocent director must be shown to have materially aided in the sale of securities to be liable. The trial court further found that the facts of the case did not establish that the four directors materially aided in the sale to Taylor.

### 2. The Statute, K.S.A. 1987 Supp. 17-1268

K.S.A. 1987 Supp. 17-1268(a) establishes the liability of any person who sells a security which is required to be registered under K.S.A. 17-1255 but is not registered, or any person who sells a security by means of untrue statements of material facts. Such a person may be liable to the person buying the security for the consideration paid for the security plus interest, costs, and attorney fees.

The alleged liability of the director defendants is based on K.S.A. 1987 Supp. 17-1268(b), which provides:

"Every person who directly or indirectly controls a seller liable under subsection (a), *every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of such a seller who materially aids in the sale,* and every broker-dealer or agent who materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that such nonseller did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable." (Emphasis added.)

The Taylors contend that the Kansas statute is a "substantially verbatim" enactment of § 410(b) of the 1956 Uniform Securities Act as amended in 1958. A comparison of the two reveals minor ·differences in punctuation and phrasing. These differences, the director defendants assert, give the statute a different meaning from the corresponding section of the Uniform Securities Act. Section 410(b) of the Uniform Act provides:

"Every person who directly or indirectly controls a seller liable under subsection (a), *every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller*

*who materially aids in the sale,* and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable." (Emphasis added.)

K.S.A. 1987 Supp. 77-201 establishes rules for statutory construction and requires that words and phrases be construed according to the context and approved usage of the language.

The director defendants, in comparing K.S.A. 1987 Supp. 17-1268(b) and § 410(b) of the Uniform Act, reason as follows: The legislature by (1) removing the modifying phrase "of such a seller" after the word director; (2) placing the phrase "or person occupying a similar status or performing similar functions" in parenthesis, (3) and adding an "or" before the word employee intended the phrase "of such a seller who materially aids in the sale" to modify the entire clause "every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee." We do not agree.

The National Conference of Commissioners on Uniform State Laws approved the Uniform Securities Act in 1956. In 1957, Kansas, using the Uniform Act as a model, enacted the Kansas Securities Act. Lovitch, *Securities Registration Under the Kansas Securities Act,* 22 Kan. L. Rev. 565, 566 (1974).

The changes in punctuation and phrasing effected by the legislature in transforming § 410(b) of the Uniform Act into K.S.A. 1987 Supp. 17-1268(b) do not insulate directors from strict liability when unregistered securities are sold.

The states that have passed § 410(b) of the Uniform Securities Act have consistently interpreted the statute to impose strict liability on partners, officers, and directors unless the statutory defense of lack of knowledge is proven. See, *e.g., Moerman v. Zipco, Inc.,* 302 F. Supp. 439, 450 (E.D.N.Y. 1969), *aff'd* 422 F.2d 871 (2d Cir. 1969); *Mitchell v. Beard,* 256 Ark. 926, 928, 513 S.W.2d 905 (1974); *Arnold v. Dirrim,* 398 N.E.2d 426, 433-34 (Ind. App. 1979); *Rzepka v. Farm Estates Inc.,* 83 Mich. App. 702, 709, 269 N.W.2d 270 (1978).

We question the trial court's reliance on *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973). *Lanza* arose under federal, not state, securities laws. The plaintiffs in *Lanza* sought compensa-

tory and punitive damages against former officers and directors of a corporation based on violations of federal securities acts and common-law fraud. The Second Circuit Court of Appeals was construing Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5 (1988); and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982). The court in *Lanza* discussed state "blue sky laws" in a footnote.

"State blue sky laws universally exempt directors from liability for fraud perpetrated by corporate officers unless the directors are in some meaningful sense culpable participants in the fraud." 479 F.2d at 1308 n.105.

The *Lanza* court identified two types of state laws. The first are those modeled after § 410(b) of the Uniform Act and the second are those in which a director is exempt from liability unless he or she participates in the sale. The *Lanza* court in footnote 105 refers to fraud; nevertheless, the court correctly characterized the Kansas statute as belonging to the first category.

K.S.A. 1987 Supp. 17-1268(b) does not require that a director materially aid in the illegal sale of securities in order to be held jointly and severally liable for the sale.

Our analysis of legislative intent commences with the observation that "Blue Sky" provisions are to be liberally interpreted in favor of purchasers to prevent fraud. *Daniels v. Craiglow*, 131 Kan. 500, 292 Pac. 771 (1930).

Kansas has required registration of securities since 1911. L. 1911, ch. 133.

The first securities statute with teeth was passed in Kansas. Loss, Fundamentals of Securities Regulation 8 (2d ed. 1988). According to Professor Louis Loss, Kansas had been a "stronghold" of populist philosophy. The resulting carryover today is to be found in the relative strictness of Midwestern securities statutes. "Indeed, it was in Kansas, apparently, that the term 'blue sky law' first came into general use to describe legislation aimed at promoters who 'would sell building lots in the blue sky in fee simple.' " Loss, Fundamentals of Securities Regulation 8.

The drafters' comment to § 410(b) of the Uniform Securities Act observes, "This section is now in the Kansas act substantially verbatim, and Virginia has adopted it with modifications." Loss and Cowett, Blue Sky Law 393 (1958).

We have in past cases identified rules to assist in statutory construction:

(1) "The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987).

(2) "Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. *State, ex rel., v. Unified School District,* 218 Kan. 47, 49, 542 P.2d 664 (1975). It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained. *State v. Sexton,* 232 Kan. 539, 657 P.2d 43 (1983)." *Director of Taxation v. Kansas Krude Oil Reclaiming Co.,* 236 Kan. 450, 455, 691 P.2d 1303 (1984).

What did the legislature intend the phrase, "of such a seller who materially aids in the sale" following the word "employee" to modify? Was the phrase intended to modify only an "employee" of such seller, or was it intended to reach back further into the language of the statute and also modify "every partner, officer, or director"? We are persuaded the critical phrase modifies only "employee" of such seller.

If the legislature had intended to make directors liable only in the event they had materially aided in the sale, the Kansas language could easily have read, "every partner, officer, or director *of such a seller who materially aids in the sale.*" (Emphasis added.)

In our K.S.A. 1987 Supp. 17-1268(b) search for legislative intent we note 2A Sutherland Statutory Construction § 47.33 (4th ed. rev. 1984):

"Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is 'the last word, phrase, or clause that can be made an antecendent without impairing the meaning of the sentence.' Thus a proviso usually is construed to apply to the provision of clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.

"Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma."

No comma was inserted in K.S.A. 1987 Supp. 17-1268(b) separating the critical qualifying phrase, "who materially aids in the sale" from the antecedents partner, officer, or director or employee.

The Kansas version of the Uniform Act was adopted in 1957. L. 1957, ch. 145. The K.S.A. 1987 Supp. 17-1268(b) equivalent section of the prior law, G.S. 1949, 17-1240, was found in the securities section of the corporation code. G.S. 1949, 17-1240 provided, in part:

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchasers; and the person making such sale or contract for sale and *every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable* to such purchaser in an action at law in any court of competent jurisdiction . . . ." (Emphasis added.)

Prior to the adoption of K.S.A. 1987 Supp. 17-1268(b), a director of a seller was liable only if he or she "participated or aided in any way in making such sale."

Section 410(b) of the Uniform Act altered a director's liability status. Strict director liability was imposed by § 410(b) unless the statutory defense of lack of knowledge was proven. If the Kansas Legislature in 1957 had intended to continue to provide the "materially aids in the sale" shield to Kansas directors it could easily have used the G.S. 1949, 17-1240 concept that had been in place since 1929. L. 1929, ch. 140.

## 2. DID THE DIRECTOR DEFENDANTS MATERIALLY AID IN THE SALE TO THE PLAINTIFFS?

Our resolution of the K.S.A. 1987 Supp. 17-1268(b) statutory construction question disposes of the Taylors' second issue.

The trial court found that facts constituting material aid by the director defendants were not present in the sale to the plaintiffs and granted the defendants summary judgment on this issue.

Our construction of K.S.A. 1987 Supp. 17-1268(b) reverses the trial court's ruling on summary judgment and removes the necessity for an analysis of this issue.

We need not determine what constitutes "material aid" under K.S.A. 1987 Supp. 17-1268(b).

### 3. The K.S.A. 1987 Supp. 17-1268(b) Statutory Defense

We have held that K.S.A. 1987 Supp. 17-1268(b) imposes strict liability on directors as nonselling parties unless the statutory defense of lack of knowledge is proven. The statute provides a defense to liability where the nonseller can show that he or she "did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist"—the lack of knowledge defense.

As their third issue, the Taylors contend that this defense is not available to the director defendants because they have not met the burden of proof required under this provision. We need not address this issue.

In its journal entry granting the director defendants summary judgment, the trial court specifically found that there are contested issues relating to the statutory defense, but that these issues were immaterial since the Taylors had not established a prima facie case. The K.S.A. 1987 Supp. 17-1268(b) statutory defense issue was not determined by the trial court's summary judgment ruling which is the basis of this appeal.

We remand the case for trial. The Taylors have established a prima facie case. The statutory defense issue will be determined by the trier of fact.

Reversed and remanded.