No. 86,280

STATE OF KANSAS, *ex. rel.* DAVID R. BRANT, SECURITIES
COMMISSIONER OF KANSAS, *Appellee*, v. BANK OF AMERICA,
TOPEKA, KANSAS, *Appellant*.

(31 P.3d 952)

Opinion filed
September 28, 2001.

*Elizabeth Drill Nay,* of Lewis, Rice & Fingersh, L.C., of Kansas City, Missouri, argued the cause, and *Thomas M. Martin* and *Scott A. Wissel,* of the same firm, were with her on the briefs for appellant.

*James W. Clark,* special assistant attorney general, office of the Kansas Securities Commissioner, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This first impression case arises from the defendant Bank of America's (Bank) refusal to comply with subpoenas seeking customer records issued by David R. Brant, Securities Commissioner of Kansas (Commissioner). Each subpoena specifically ordered the

Bank not to notify the customer of the subpoena. The Bank refused to honor the subpoenas and to comply with the confidentiality requirement. The Commissioner filed an application under K.S.A. 17-1265(d) (refusal to obey a subpoena) and K.S.A. 50-1009(b) (application for court order) for an order to enforce the subpoenas and to prohibit the Bank from notifying its customers.

The district court held that: (1) the Bank's customers have no reasonable expectation of privacy in their bank records and (2) the Commissioner, under his statutory power to conduct private investigations, had the authority to prohibit the Bank from notifying its customers of the subpoenas. The district court granted the Commissioner's application and restrained the Bank from notifying its customers of the subpoenas. The Bank now appeals.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

The issues are whether the district court erred in ruling that: (1) the Commissioner has the authority under K.S.A. 17-1265(a)(1) to issue a subpoena that prohibits the Bank from informing its customers of the subpoena, and (2) the Bank's customers have no reasonable expectation of privacy in their bank records and, thus, were not entitled to receive notice that their bank records were subpoenaed.

The Bank also contends that the district court's application of K.S.A. 17-1265(a)(1) is unconstitutional because the Commissioner's conduct imposed a prior restraint on speech (an alleged violation of the Bank's rights under the First Amendment and § 11 of the Kansas Constitution Bill of Rights). We do not reach the contention. The prior restraint argument was not presented to the district court. Generally, where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before us for review. *Ruddick v. Boeing Co.*, 263 Kan. 494, 498, 949 P.2d 1132 (1997).

Finding no error, we affirm.

## FACTS

The Commissioner issued and served on the Bank subpoenas duces tecum for records of three different bank accounts. The first

subpoena requested originals or authenticated copies of specified checks and wire transfers, and copies of the account application and signature card for the purchasers or issuers of the specified transactions. Each subpoena included the following confidentiality clause:

"This subpoena is issued in connection with a law enforcement investigation. Therefore, the existence of this subpoena and any testimony or documents produced pursuant to it are to remain confidential and shall not be disclosed to any third party, including the account holder or customer who is the subject of the subpoena, unless prior written approval is obtained from the Kansas Securities Commissioner or the issuer of this subpoena."

The second subpoena requested copies of the signature card and all monthly statements from May 1998 through August 1999 for that account. The third subpoena, issued under K.S.A. 50-1009(a)(13) of the Kansas Loan Broker's Act, requested originals and authenticated copies of a specified check.

The Bank has a privacy policy that it provides to its customers and publishes on its internet web site. The policy says, in part:

"If we receive a subpoena or similar legal process demanding release of any information about you, we will generally attempt to notify you (*unless we believe we are prohibited from doing so*). Except as required by law or as described above, we do not share information with other parties, including government agencies." (Emphasis added.)

There was no evidence presented to the district court suggesting that the customers whose accounts were the subject of the three subpoenas ever saw the text or relied upon it when opening an account with the Bank.

The Bank explained its privacy policy regarding subpoenas in a letter to the Commissioner:

"We recognize that state law does not mandate that a financial institution notify its customers when served with a subpoena seeking the customer's bank records. However, we are not aware of **any prohibition** under state law against notifying the customer. If you are aware of court cases, attorney general opinions, or other authority **specifically prohibiting disclosure** of subpoenas, please share them with us."

The Commissioner did not respond to the Bank's letter. The Bank informed the Commissioner that within 20 days it intended

to forward copies of the subpoenas to its customers whose records were subpoenaed. The Commissioner filed an unsealed application in the district court listing the accounts by name and applied for an order requiring production of the documents. The Bank informed the district court that it had no objection to honoring the subpoenas, but it insisted on notifying its customers. The district court said: "The exact nature of the investigation, the manner in which the records are needed for the investigation, whether the records relate to targets of the investigation and other information about the investigation are not known."

The Commissioner admitted that the sole authority for imposing confidentiality requirements on the Bank was the use of the term "private investigations" in K.S.A. 17-1265(a)(1).

## DISCUSSION

Our task is to decide, based on the facts here, whether the legislature intended the Commissioner, under K.S.A. 17-1265(a)(1), to have the authority to tell the Bank that it cannot inform its customer that the Commissioner has subpoenaed the customer's bank records. Stated another way, may a K.S.A. 17-1265(a)(1) private investigation be considered a confidential investigation so that the customer is not informed by the Bank of the subpoena?

We first consider the Bank's contention that the district court erred in finding that the Commissioner had the authority to conduct confidential investigations. At issue here is the meaning of K.S.A. 17-1265(a)(1). We have unlimited review over questions of statutory interpretation. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

A threshold observation is that a court may not enforce a subpoena that exceeds the authority of the administrative agency issuing the subpoena. See *Atchison, T.& S.F. Rly. Co. v. Lopez*, 216 Kan. 108, 114-15, 531 P.2d 455 (1975). Generally, administrative agencies such as the Commissioner, as creatures of statute, may only act within the scope of authority granted by authorizing statutes. *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 706, 957 P.2d 379 (1998).

The Commissioner's authority to issue subpoenas is granted by K.S.A. 17-1265, which says in part:

"(a) The commissioner may: (1) Make *public or private investigations* within or outside of this state as necessary to determine whether any registration should be granted, denied or revoked or whether any person has violated or is about to violate any provision of this act or any rule or order hereunder, or to aid in the enforcement of this act or in the prescribing of forms or adoption of rules and regulations. . . .

. . . .

"(c) For the purpose of any investigation or proceeding under this act, the commissioner or any officer designated by the commissioner may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the commissioner deems relevant or material to the inquiry." (Emphasis added.)

K.S.A. 17-1265(a)(1) is similar to § 407 of the Uniform Securities Act of 1956 (Investigations and Subpoenas). The Commissioner also receives investigative authority under K.S.A. 50-1009, a provision of the Loan Brokers' Act.

The district court interpreted the phrase "commissioner may . . . [m]ake public or private investigations" in K.S.A. 17-1265(a)(1) as a grant of authority to the Commissioner to conduct private investigations and to impose a requirement of confidentiality. The district court relied upon *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 81 L. Ed. 2d 615, 104 S. Ct. 2720 (1984). *O'Brien* plays a leading role in our resolution of the controversy here.

In *O'Brien*, the United States Supreme Court faced the question of whether the Securities and Exchange Commission (S.E.C.) was obligated to advise the target of an investigation that subpoenas had been issued to third parties. Those under investigation sought an injunction against the subpoenas. No statute addressed the issue. However, an S.E.C. regulation required all formal investigative proceedings to be nonpublic, unless otherwise ordered. *O'Brien* recognized that this rulemaking was within the authority of the S.E.C., which had been given broad power to issue subpoenas. That power, coupled with the S.E.C.'s rulemaking authority, was sufficient to empower the S.E.C. to conduct private investi-

gations with no notice to those targeted by the investigation of the subpoenas being issued to third parties. 467 U.S. at 743-47.

Also, *O'Brien* addressed the issue of whether there was an entitlement to notice in order to preserve the ability to object to the subpoenas. After discussing the procedural difficulties of requiring notice, Justice Marshall, speaking for a unanimous court, emphasized the important policy considerations underlying the power to conduct private investigations:

"A target given notice of every subpoena issued to third parties would be able to discourage the recipients from complying, and then further delay disclosure of damaging information by seeking intervention in all enforcement actions brought by the Commission. More seriously, the understanding of the progress of an SEC inquiry that would flow from knowledge of which persons had received subpoenas would enable an unscrupulous target to destroy or alter documents, intimidate witnesses, or transfer securities or funds so that they could not be reached by the Government. Especially in the context of securities regulation, where speed in locating and halting violations of the law is so important, we would be loathe to place such potent weapons in the hands of persons with a desire to keep the Commission at bay." 467 U.S. at 750-51.

The United States Supreme Court concluded it would not curtail the administrative agency's discretion to decide when investigations should be private and when notice should be given. 467 U.S. at 751.

The Bank contends grand jury secrecy language in K.S.A. 22-3012 shows that the "legislature is unwilling to allow gag orders or other secrecy requirements, even though there is a risk that grand jury witnesses will notify . . . the target of a grand jury proceeding." The Bank argues that it is illogical to conclude that the legislature "implicitly granted" such a "sweeping authority" to the Commissioner. K.S.A. 22-3012 says in part: "No obligation of secrecy may be imposed upon any person except in accordance with this rule." A statutory interpretation counterargument would suggest that because the legislature covered secrecy in detail in K.S.A. 22-3012, it would have also done so in the Kansas Securities Act if that was its intention.

The Commissioner observes that administrative inquisition subpoenas are treated to a more relaxed standard of relevancy when compared to those in criminal and civil litigation. See *In re Tax*

*Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 254-55, 891 P.2d 422 (1995). Thus, he suggests that statutes granting subpoena power must be construed broadly. See *State v. Hobson*, 234 Kan. 133, 144-45, 671 P.2d 1365 (1983) (a prosecutor may conduct an inquisition regarding charges pending against an accused after the accused has been bound over for trial); *Yellow Freight System, Inc., v. Kansas Commission on Civil Rights*, 214 Kan. 120, 124, 519 P.2d 1092 (1974) (the Civil Rights Commission's subpoena power was not limited to documents relating to a scheduled hearing, even though the statutory language of K.S.A. 1971 Supp. 44-1005 granted the power only in conjunction with a hearing); *Southwestern Bell Tel. Co. v. Miller*, 2 Kan. App. 2d 558, 565, 583 P.2d 1042, *rev. denied* 225 Kan. 845 (1978) (a "common sense" construction of K.S.A. 1997 Supp. 22-3101[2] was found to include the power to subpoena documents, even though the inquisition statute only gave authority to subpoena witnesses).

The Bank also argues that the district court's interpretation of K.S.A. 17-1265(a)(1) is contrary to the legislature's use of the phrase "public or private" in other Chapter 17 provisions of the Kansas Statutes Annotated.

The Bank points out that a review of Chapter 17 reveals that the legislature used the phrase "public or private" many times in 11 different statutes. It contends that the legislature never intended "public or private" to be defined as "non-secret or secret." The Bank argues that the legislature intended the term "public" to mean "of the state," "with notice to public at large," or "official." The legislature, according to the Bank, intended the term "private" to mean "of private persons or entities," "without notice to the general public," or "unofficial."

Our decision on the meaning of K.S.A. 17-1265(a)(1) involves the search for legislative intent. Ordinarily, when determining legislative intent, identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning absent anything in the context to suggest that a different meaning was intended. *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 648, 693 P.2d 1187 (1985).

Chapter 17 covers a vast body of statutory law dealing with such dissimilar organizations as cemetery corporations, K.S.A. 17-1301 *et seq.*, credit unions, K.S.A. 2000 Supp. 17-2201 *et seq.*, and the formation of corporations, K.S.A. 2000 Supp. 17-6001 *et seq.* According to the Bank, the legislature in Chapter 17 used "public or private" to modify the following terms: "investigations" (K.S.A. 17-1265[a][1], securities regulation); "agency" (K.S.A. 17-2345[c], municipal housing authority; K.S.A. 17-4747[b], preparation of urban renewal plan; K.S.A. 17-4748[b], urban renewal powers); "hearings" (K.S.A. 17-2345[g], municipal housing law); "sale" (K.S.A. 17-2352, municipal bonds; K.S.A. 17-5424, guaranteed stock, savings and loan associations; K.S.A. 17-5558, liquidation of a savings and loan association; K.S.A. 17-6907, receiver, corporate property); "person" (K.S.A. 17-2345[c], municipal power to contract; K.S.A. 17-4747[b], submission of urban renewal plan; K.S.A. 17-4748[b], [f], contract for urban renewal); "sources" (K.S.A. 17-4748[e], to borrow money, municipality); and "corporation" (K.S.A. 17-4903[c], definition). The Bank contends that the legislature's use of "public or private" to modify "hearings" and "sale" is relevant to the present situation. It argues that, like an investigation, a hearing or sale is an activity or event. Thus, the Bank concludes that the legislature intended the modifier "public or private" to have the same meaning for each of the three terms—"investigations," "hearing," and "sale." We disagree.

Neither "public" nor "private" as used in either K.S.A. 17-1265(a)(1) or § 407 of the Uniform Securities Act is defined. The problem with the Bank's "look elsewhere in Chapter 17" argument is that legislative selection of the words "public" and "private" will be influenced by the legislative intent behind each use. The Bank has cited no authority, neither a case nor regulation, state or federal, interpreting a statute similar to K.S.A. 17-1265(a)(1) in the manner it advances here.

The Bank's position that the word "private" in K.S.A. 17-1265(a)(1) could not mean confidential or secret clashes with the Commissioner's view on the word's meaning.

A review of the parties' opposing arguments suggests that the meaning of "private" in K.S.A. 17-1265(a)(1), so clear to each, may be ambiguous.

We note that "secret" is a synonym for "private." Webster's Ninth New Collegiate Dictionary 936 (1991) (Collegiate); Webster's Third New International Dictionary 1805 (Unabridged ed. 1976) (International). "Private" and "secret" are both synonyms of "confidential." Collegiate, p. 275; International, p. 476. As "synonyms," these words have the same or nearly the same meaning in some or all senses. See Collegiate, p. 1198; International, p. 2320.

In interpreting 17-1265(a)(1), the Commissioner emphasizes the doctrine of operative construction. Application of the doctrine here would give deference to the Commissioner's interpretation of the statute. The Bank counters by observing that no court can give deference to an interpretation that sanctions unauthorized unconstitutional conduct.

We have said in discussing and applying the doctrine: " 'This court has long given great weight under the doctrine of operative construction to the interpretation of a statute by the administrative body charged with enforcing the statute.' " *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809, 667 P.2d 306 (1983) (quoting *State v. Helgerson*, 212 Kan. 412, 413, 511 P.2d 221 [1973]).

*In re Application of Zivanovic*, 261 Kan. 191, 192-94, 929 P.2d 1377 (1996), applied the doctrine by extending deference to the Board of Tax Appeals interpretation of the statute in issue. We said in *Zivanovic*:

" 'The ruling of an administrative agency on questions of law, while not as conclusive as its findings of facts, is nonetheless persuasive and may carry with it a strong presumption of correctness. . . .'

" 'Usually, interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to great judicial deference. [Citation omitted.] The agency's interpretation of a challenged statute may, in fact, be entitled to controlling significance in judicial proceedings. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review.' [Citations omitted.]" 261 Kan. at 193.

See also *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 720-23, 792 P.2d 971 (1990) (disagreeing with the agency's interpretation); *Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. at 809 (agreeing with the agency's interpretation). In

*Pittsburg State,* we quoted the following from *Harrison v. Benefit Society,* 61 Kan. 134, 140, 59 Pac. 266 (1899): " 'The rule is well settled that "in all cases of ambiguity the contemporaneous construction not only of the courts but of the departments, and even of the officials whose duty it is to carry the law into effect, is controlling." ' " 233 Kan. at 809.

The K.S.A. 17-1265(a)(1) statutory interpretation call is ours to make. The doctrine of operative construction has an apt application here. Kansas has regulated securities since 1911. See *Taylor v. Perdition Minerals Group, Ltd.,* 244 Kan. 126, 132, 766 P.2d 805 (1988). The Commissioner is charged with the administration of the Kansas Securities Act. K.S.A. 2000 Supp. 17-1270. "The purpose of the Kansas Securities Act is to place the traffic of promoting and dealing in speculative securities under rigid governmental regulation and control to protect investors, thereby preventing, so far as possible, the sale of fraudulent and worthless speculative securities." *Activator Supply Co. v. Wurth,* 239 Kan. 610, 615, 722 P.2d 1081 (1986). The Commissioner looks to Justice Marshall's language in *O'Brien,* quoted earlier in our opinion, to justify the confidentiality requirement. Confidentiality is necessary, the Commissioner claims, to carry out his statutory mission.

The Commissioner's interpretation of K.S.A. 17-1265(a)(1), which we endorse under the facts here, applies to a customer's bank records. The customers of the Bank whose records are the targets of the subpoenas have no expectation of privacy in those records, a subject we discuss more fully later in the opinion.

In our review of the district court's order enjoining the Bank from notifying its customers, we find the Florida Supreme Court's reasoning in *Winfield v. Div. of Pari-Mutuel Wagering,* 477 So. 2d 544 (Fla. 1985), instructive. Florida raised the privacy bar for each of its citizens by placing a Floridian's right to privacy in the Florida Constitution. 477 So. 2d at 548; see also *State v. Schultz,* 252 Kan. 819, 828, 850 P.2d 818 (1993) (citing *Winfield* as rejecting *United States v. Miller,* 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619 [1976], and relying on the Florida Constitution to hold Floridians [unlike Kansans] have a legitimate expectation of privacy in their bank records).

In *Winfield*, the Florida agency overseeing pari-mutuel wagering issued various subpoenas to banks to obtain customer bank records. *The agency gave no notice of the subpoenas to the customers and asked the banks not to inform the customers.* In upholding the agency's authority to subpoena the bank records without notice, the *Winfield* court said:

"We believe that the [Florida Constitutional] amendment should be interpreted in accordance with the intent of its drafters. *Thus, we find that the law in the state of Florida recognizes an individual's legitimate expectation of privacy in financial institution records. However, we further find that the state's interest in conducting effective investigations in the pari-mutuel industry is a compelling state interest and that the least intrusive means was employed to achieve that interest. We also note that predisclosure notification by a bank to its customers should not be and is not mandated by article I, section 23. Thus, we hold that article I, section 23, of the Florida Constitution does not prevent the Division of Pari-Mutuel wagering from subpoenaing a Florida citizen's bank records without notice.*" (Emphasis added.) 477 So. 2d at 548.

The *Winfield* court held that the bank customers' right of privacy in bank records, a state constitutional right, yields to an investigation of the pari-mutuel industry, which, to be effective, must be conducted without notice. 477 So. 2d at 548.

Here, unlike the court in *Winfield,* we are not confronted with balancing a bank customer's privacy interest in bank records with a state agency investigation because a Kansas citizen has no expectation of privacy in bank records. *Schultz,* 252 Kan. at 823-24. We are testing the Commissioner's decision regarding what is required for an effective investigation in the securities field against the Bank's desire to notify its customers that their bank records have been subpoenaed by the Commissioner. The Commissioner's subpoena power is not self-executing. There is an avenue open to challenge the Commissioner's alleged abuse of his investigative powers. Judicial intervention is required for subpoena enforcement. K.S.A. 17-1265(d). We indulge in the customary presumption that the Commissioner, as a public officer, will act in good faith. See *Southwestern Bell Tel. Co.,* 2 Kan. App. 2d at 566.

A reasonable interpretation of the Commissioner's K.S.A. 17-1265(a)(1) power to conduct private investigations includes the power to require confidentiality.

## No Expectation of Privacy in Bank Records

The district court, relying on *Schultz*, held that under the circumstances the Bank's customers had no reasonable expectation of privacy in their bank records. Thus, they were not entitled to receive notice that their bank records were the targets of the Commissioner's subpoenas. As the district court noted, the question of whether Kansas bank customers have a right of privacy where subpoenas have been issued was decided in *Schultz*.

The Bank contends that its customers' right to privacy under the Fourth Amendment to the United States Constitution was violated and urges us to overrule *Schultz*. The privacy issue involves a question of law, over which we have unlimited review. See *Board of Johnson County Comm'rs v. Grant*, 264 Kan. 58, 61, 954 P.2d 695 (1998). The Bank's privacy policy said that it would "generally attempt to notify" its customers of subpoenas demanding the release of information, unless it was prohibited from doing so. However, the policy clearly informed the customers that they cannot always expect notification. We agree with the district court's analysis:

"Further, the right to privacy statement of Bank of America does not create a privacy expectation. The policy statement merely assures that the Bank will 'generally attempt to notify you (unless we are prohibited from doing so). Except as required by law or as described above, we do not share information with other parties, including government agencies.' This language does not create a privacy expectation in a situation such as this where an agency is empowered to conduct an investigation in private. The subpoena falls into the category excepted by Bank of America's recognition that it may be prohibited from notifying customers of the subpoena."

In *Schultz*, a majority of this court adopted the rationale of *Miller*, 425 U.S. 435, and found that Kansas citizens have no constitutional right to privacy in their bank records. 252 Kan. at 834-35. In *Miller*, the United States Supreme Court held that bank customers have no reasonable expectation of privacy in their bank records because such records are "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." 425 U.S. at 442.

*Schultz* noted that Congress adopted the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* (1988) (RFPA), in direct re-

sponse to and as criticism of the *Miller* decision. The RFPA requires that the customer have notice and an opportunity to object before the financial institution complies with a subpoena. *Schultz*, 252 Kan. at 831 (citing 12 U.S.C. § 3405 [1988]). *Schultz* also observed that although about one-third of the 50 states had enacted a state equivalent of the RFPA, the Kansas Legislature had not done so. Moreover, the majority rejected Schultz' argument that § 15 of the Kansas Constitution Bill of Rights should be interpreted independently of the Fourth Amendment to the United States Constitution to provide heightened protection to Kansas citizens. 252 Kan. at 834.

The Bank relies on *O'Connor v. Ortega*, 480 U.S. 709, 94 L. Ed. 2d 714, 107 S. Ct. 1492 (1987), as authority for overruling *Schultz*. In *Ortega*, the United States Supreme Court held that the reasonableness of a privacy expectation depends upon current societal norms and upon the context in which the expectation arose. See 480 U.S. at 715-17. The Bank keys on the *Ortega* court's observation: "Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." 480 U.S. at 718. The Bank's reasoning is misplaced. *Ortega* did not overrule *Miller*; rather, its facts are distinguishable from those in *Miller*. *Ortega* dealt with the question of employees' expectations of privacy in the workplace, whereas *Miller* dealt with the issue of bank customers' right to privacy.

Justice Abbott, speaking for the majority in *Schultz*, pointed out that our neighboring states, Colorado by constitutional interpretation and Missouri, Oklahoma, and Nebraska by statute, offered their citizens greater privacy rights in financial matters than does Kansas. 252 Kan. at 831-32. We note that the legislature has been aware of *Schultz*' teaching for 8 years and has taken no action to alter the *Schultz* holding. *Schultz* controls bank record privacy expectations in this jurisdiction. The Bank's remedy would appear to lie in persuading the legislature to join the 17 states noted in the Bank's brief, including our neighboring states, in enacting legislation establishing a privacy right in bank records.

The Bank observes that in 1999, the United States Congress passed the Gramm-Leach-Bliley Act (GLB), 15 U.S.C. § 6801 *et seq.* (1999 Supp.). The GLB says in part: "It is the policy of the Congress that each financial institution has an affirmative duty and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' non-public personal information." 15 U.S.C. § 6801(a). The Bank argues that the holding in *Schultz* is inconsistent with the GLB, which provides privacy to bank customers. The GLB was neither briefed nor argued in the district court. The effect, if any, of the GLB on the issues here, is not before us. We note, however, that under the GLB, there is no right to privacy where authorized subpoenas have been issued. 15 U.S.C. § 6802(e)(8) (1999 Supp.).

### Standing

The Commissioner argues that the Bank lacks standing to raise the constitutional rights of the third-party Bank customers. The Commissioner failed to raise this issue in the district court; thus, the issue is not properly before us. See *Ruddick v. Boeing Co.*, 263 Kan. 494, 498, 949 P.2d 1132 (1997). In addition, no cross-appeal has been filed. Consideration of the issue on appeal is precluded. See *Vaughn v. Murray*, 214 Kan. 456, Syl. ¶ 5, 521 P.2d 262 (1974).

A final observation. The Bank for the first time on appeal characterizes the Commissioner's decision to "publicize the various subpoenas" by filing an unsealed application and then arguing confidentiality is "disingenuous." The Commissioner responds by labeling the Bank's argument "ingenuous." The Commissioner points out he can only enforce subpoenas through judicial intervention under K.S.A. 17-1265(d). According to the Commissioner, had the Bank observed its own policy statement and complied with the subpoenas, no public proceeding would have been necessary. The names of the Bank's customers that the Commissioner seeks to keep confidential are sprinkled throughout the court files and briefs of the parties, all public records. Resolution of the direction the Bank and the Commissioner travel with this puzzling development is not before us.

Affirmed.

LARSON, J., not participating.

DAVID S. KNUDSON, J., assigned

KNUDSON, J., dissenting: I respectfully dissent from the majority's holding that K.S.A. 17-1265(a)(1) confers authority upon the Securities Commissioner to unilaterally impose gag orders in conjunction with subpoenas issued in "private investigations." The upshot of this decision gives the Commissioner a green light to impose gag orders without prior judicial review and, within the context of this litigation, regardless of whether the customers whose records are sought are targets of the investigation.

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

K.S.A. 17-1265(a)(1) is plain and unambiguous. Therefore, there is no rationale to apply the Commissioner's interpretation of the statute. Absent an ambiguity in the language of the statute, the doctrine of operative construction is not applicable. *Cf. Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809, 667 P.2d 306 (1983).

The majority states: "A review of the parties' opposing arguments suggests that the meaning of 'private' in K.S.A. 17-1265(a)(1), so clear to each, may be ambiguous." 272 Kan. at 189. I do not believe the disagreement of interested litigants as to the meaning of a statute is considered a recognized canon of legislative construction.

The court also reasons that "private" and "secret" are synonyms for "confidential," relying upon various dictionary definitions, suggesting the Commissioner's interpretation has merit. The difficulty with this approach is that the court ignores comparable legislative enactments regarding similar subject matter.

For instance, under K.S.A. 50-153 *et seq.*, the attorney general and county attorneys, when conducting an inquisition in antitrust cases, are specifically authorized to issue subpoenas, but there is no mention of a concurrent power to impose a gag order on witnesses. Similarly, in criminal inquisitions, subpoena powers do not provide for the imposition of gag orders. See K.S.A. 22-3001 *et seq.* (grand jury proceedings) and K.S.A. 2000 Supp. 22-3101 (inquisitions). Under the doctrine of *expressio unius est exclusio alterius*, I conclude the legislature did not intend to confer upon the Commissioner such an unexpressed power when it is denied to the prosecutors of Kansas in grand jury proceedings and inquisitions.

The district court finds persuasive *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 81 L. Ed. 2d 615, 104 S. Ct. 2720 (1984), a decision clearly distinguishable from the facts at hand. In *O'Brien*, the issue was whether the S.E.C. was obligated to advise the target of an investigation that subpoenas had been issued to third parties. This has nothing whatsoever to do with whether a state agency has the implied power to issue a gag order in conjunction with a subpoena.

Parenthetically, I would also note that while the majority notes the similarity between K.S.A. 17-1265(a)(1) and the Uniform Securities Act of 1956, § 407 (Investigations and Subpoenas), the court has been unable to point to a federal rule, regulation, or court decision that gives persuasive support to its holding.

Finally, I respectfully suggest the majority has failed to give proper recognition to the privacy interests of the Bank's customers in interpreting K.S.A. 17-1265. See, for example, the majority's discussion of *Winfield v. Div. Pari-Mutuel Wagering*, 477 So. 2d 544 (Fla. 1985). Although I concede a bank customer in Kansas has no constitutional expectation of privacy in his or her bank records, most customers surely believe their banker will notify them if some government agency is snooping around in their records and accounts. I do not believe the legislature intended to negate that

entirely rational and understandable expectation by the banking public.

For the foregoing reasons, I would deny the Commissioner's application and enter judgment in favor of the Bank.

ALLEGRUCCI, J., joins the foregoing dissenting opinion.