ATTORNEYS FOR APPELLANT

Lynne D. Lidke
Michael B. Langford
A. Jack Finklea
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Martin T. Fletcher, Sr.
David E. Bailey
Fort Wayne, Indiana

# In the
# Indiana Supreme Court

### No. 49S02-0701-CV-14

RALPH E. LEAN,

*Appellant (Defendant below),*

v.

CHARLES D. REED AND
PAUL A. REINKEN,

*Appellees (Plaintiffs below),*

AND

GALAXY ONLINE, INC. AND GALAXY
INTERNET, INC.,
.

*Appellees (Defendants below).*

Appeal from the Marion Superior Court, No. 49D07-0307-PL-001375
The Honorable Gerald S. Zore, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0602-CV-126

**November 27, 2007**

**Boehm, Justice.**

The Indiana Securities Law creates liability of a director of a corporation for violations of the requirement that the corporation's securities be registered and for misrepresentations and omissions of material facts in the sale of its securities. The director may establish a defense that

in the exercise of reasonable care he did not know and could not have known of the violations. In most cases reasonable care is a fact issue. However, where it is undisputed that the director had no basis other than an assumption that management and counsel had arranged the transaction in conformity to law, failure to exercise reasonable care is established as a matter of law.

## Factual and Procedural Background

The plaintiffs are shareholders who exchanged their shares in Abacus Computer Services, Inc. for shares of Galaxy Online, Inc. (GOLI). They sued GOLI and its officers and directors for alleged violations of the Indiana Securities Law (ISL) in that transaction. This is an appeal from a grant of partial summary judgment declaring Ralph Lean, one of the GOLI directors, liable to the plaintiffs under section 19(d) of the ISL but leaving damages for trial.

GOLI is a corporation organized and existing under the laws of the Yukon Territory. GOLI was engaged in gold mining, but by mid-1999, was failing, and its directors shifted the company's focus to the internet. Galaxy Internet, Inc. (GI), unrelated to GOLI, had been formed in September 1998 to become an internet service provider. By mid-1999, GI remained essentially a shell corporation funded by loans from its directors but unable to raise the capital required to become an operating business. In the spring of 1999, the directors of GOLI and GI devised a plan to permit GI to expand and to keep GOLI alive. In December 1999, GOLI disposed of its remaining mining assets and changed its stated purpose to engaging in the internet business. GOLI then issued 20,000,000 new shares of common stock to acquire GI and an affiliated corporation. This brought GOLI's total issued shares to 47,000,000. In January and February of 2000, GOLI raised cash by issuing an additional 3.8 million shares to various groups, including some of GOLI's officers and directors at prices from $1.25 to $1.50 per share. GOLI also began issuing its common stock to acquire existing internet service providers, including Abacus Computer Services, Inc., an Indiana corporations based in Indianapolis.[1]

GOLI reached an agreement to acquire Abacus in "very late March" of 2000 and the deal closed on March 31, 2000. Abacus shareholders were issued a total of 600,000 shares of GOLI common stock, of which 200,000 shares were issued to each of Abacus's founders, Charles D.

---

[1] The facts in this paragraph are taken from the complaint which was designated by Lean pursuant to Trial Rule 56(C) and are not contested.

2

Reed and Paul A. Reinken, both residents of Indiana and the plaintiffs in this lawsuit. GOLI's shares were not registered under section 3 of the ISL, and Lean concedes that there were material omissions in the disclosures incident to the Abacus acquisition. The complaint alleges that Reed and Reinken valued Abacus at $3,600,000, or $6.00, per GOLI share, and they seek to recover $1,200,000 each plus interest and attorney fees. The amount of requested damages suggests that GOLI's shares became worthless, but the record gives only sketchy information of GOLI's history after the Abacus acquisition. We are told that GOLI's shares traded on the Toronto Stock Exchange at prices up to $18.00 (either U.S. or Canadian), and Lean resigned from the Board on March 27, 2001 due to his concern over the "financial deterioration of the company" and "its ability to continue as a going business."[2]

The plaintiffs allege sales of unregistered securities in violation of section 3 of the ISL and material misrepresentations and omissions in violation of section 12(2). The complaint asserts joint and several liability of GOLI, GI, and ten individuals who were officers, directors, or controlling persons of GOLI. The claim against the individuals is based on the derivative liability provisions found in section 19(d) of the ISL.

The plaintiffs moved for partial summary judgment against Lean, seeking a determination that Lean was liable to them under section 19(d), but leaving damages for trial. The trial court granted partial summary judgment in favor of the plaintiffs, concluding that Lean was liable to the plaintiffs under section 19(d) and rejecting his defense of reasonable care.

The order granting summary judgment was appealable as a final order under Trial Rule 54(B), and Lean appealed, naming the plaintiffs, GOLI, and GI as appellees. Only Lean and the plaintiffs appeared in the Court of Appeals. The record does not fully explain the status of claims against other parties.[3] The Court of Appeals affirmed. Lean v. Reed, 854 N.E.2d 79 (Ind. Ct. App. 2006). We granted transfer. 2007 Ind. LEXIS 52 (Ind. Jan. 11, 2007).[4]

---

[2] The facts in this paragraph are undisputed according to the evidence designated pursuant to Trial Rule 56(C).

[3] The CCS refers to dismissals as to several of the other defendants and also refers to an order of the bankruptcy court without identifying the bankrupt. The status of remaining claims, if any, against other defendants is unclear.

[4] At a time when this opinion was substantially completed the parties notified this court informally that settlement of this case was imminent. Subsequently they filed a notice that the case had been dismissed

## Standard of Review

"The standard of review of a summary judgment ruling is the same as that used in the trial court:  summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Row v. Holt, 864 N.E.2d 1011, 1013 (Ind. 2007) (quoting Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005)).  All inferences are to be drawn in favor of the non-moving party. Id.

## Liability of Directors Under the Indiana Securities Law

A. *Relevant Statutory Law*

The ISL, Indiana Code sections 23-2-1-1 to 25, is a version of the Uniform Securities Act of 1956.  Like its counterparts in most states, it requires registration of newly issued securities and imposes liability for selling unregistered securities.  Section 19(a) of the ISL imposes civil liability on the seller of unregistered securities unless an exemption applies for the security or the transaction.[5]  Section 19(b) creates a civil remedy against the seller for violations of the Act, and Section 12(2) provides that a sale of securities by means of a material misrepresentation or omission violates the Act.[6]

Section 19(d) of the ISL provides in relevant part:

> A person who directly or indirectly controls a person liable under subsection (a), (b), or (c), a partner, officer or director of the person,  . . . are also liable jointly and severally with and to the same extent as the person, unless the person who is liable sustains the burden of proof that the person did not know and in the

---

by the trial court with prejudice pursuant to a stipulation of dismissal.  Although as between the parties this matter is now settled, we nonetheless believe the legal issues raised in this case are significant and warrant this Court's attention.  We therefore publish the opinion.

[5] Indiana Code section 23-2-1-3 provides:  "It is unlawful for any person to offer or sell any security in Indiana unless:
    (1) it is registered under this chapter;
    (2) the security or transaction is exempted under section 2 of this chapter; or
    (3) it is a federal covered security."

[6] Indiana Code section 23-2-1-12  provides:
    It is unlawful for any person in connection with the offer, sale or purchase of any security, either directly or indirectly, . . . (2) to make any untrue statements of material fact or to omit to state a material fact necessary in order to make the statements made in the light of circumstances under which they are made, not misleading . . . .

exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

The net effect of these provisions is that a director of a selling corporation who cannot sustain the reasonable care defense is liable for both registration and disclosure violations by the corporation.

B. *The Parties' Contentions*

The plaintiffs' motion for summary judgment contended that Lean's liability to them was established by undisputed facts. As for the registration claim, these facts were that GOLI issued stock to the plaintiffs in exchange for value, Lean was a director of GOLI at the time the stock was issued, the securities were not registered, and no exemption applied. The plaintiffs also contend there was no factual issue as to the claim that the transaction violated section 12(2) of the Act because GOLI misrepresented or omitted to disclose the following material facts:

a) in December 1999, GOLI issued 20 million shares at prices ranging from $0.08 to $0.78 per share,

b) at the end of 1999, GOLI had issued options to purchase over 10 million GOLI shares at prices from $0.08 to $0.78 per share,

c) between January 1 and February 22, 2000, GOLI granted 5,160,000 stock purchase options to GOLI's corporate officers, directors including Lean, and key employees exercisable at $1.25 to $1.50 per share, and

d) on February 22, 2000, GOLI sold 2,577,084 shares of GOLI stock in a private placement at $0.70 per share.

Lean conceded all these facts. Lean denied the plaintiffs' allegation that they had no knowledge of any of the violations of the ISL, but he designated no evidence contesting the plaintiffs' affidavits that they were unaware of the lack of registration or the transactions with officers and directors. Accordingly, for purposes of summary judgment the trial court accepted these facts as established.

5

Lean does not dispute that GOLI is "a person liable under subsection (a)" for issuing un-registered securities to the plaintiffs in violation of section 3 and for material omissions in the disclosures incident to that transaction in violation of section 12(2). Lean does dispute, however, whether his conduct in approving the issuance of GOLI stock was reasonable. Lean contends that the trial court's summary judgment ruling in favor of the purchasers, "erroneously overlooks questions of material fact, imposes an absolute duty of inquiry upon Lean not required by Indiana law, and effectively eliminates from Section 19(d) the reasonable care defense to which Lean is entitled." Lean's principal contention is that there is an issue of fact raised by his affirmative defense that he "did not know, and in the exercise of reasonable care could not have known," of the facts that created GOLI's liability. The plaintiffs respond that Lean failed to carry the burden of establishing this affirmative defense.

Lean argues that "reasonable care" required by section 19(d) places no duty to inquire as to the compliance with registration requirements or adequacy of disclosures. He contends that both are left to managers and the corporate attorneys to address. In short, Lean contends that, as a matter of law, it is reasonable care for a director to assume that management and its advisers have taken the appropriate steps to comply with legal requirements. Lean argues that this is particularly true of a director new to the board at the time the securities transaction is approved. Alternatively, Lean contends that summary judgment is never appropriate to resolve a question of "reasonable care" because it is ultimately a question for the trier of fact.

C. *Federal Case Law*

Lean directs us to federal cases interpreting a similar defense under the civil remedy provision of the Securities Act of 1933 section 12(a)(2), 15 U.S.C. section 77*l*(a)(2) (2000). There is a well-developed body of case law under the federal securities laws, and in many cases federal authority is appropriate in interpreting the standards required by state securities law. Paul J. Galanti, Business Associations, 14 Ind. L. Rev. 91, 95 (1981). But many state securities laws antedate the Securities Act of 1933 and "provide more rigorous standards for the offer and sale of securities than does the federal regime." Johnson v. Colip, 658 N.E.2d 575, 576 (Ind. 1995) (citing Louis Loss & Joel Seligman, 1 Securities Regulation 59 (3d ed. 1989), as suggesting that Congress might not have been satisfied with the less stringent requirements of the Securities Act

6

of 1933 had it not been for the already established and more protective state Blue Sky Laws). Federal authority does not provide useful guidance on points where there are important differences between the state statute and its federal counterparts.  C.f. Kirchoff v. Selby, 703 N.E.2d 644, 650 (Ind. 1998).

Lean's reliance on federal case law is misplaced because derivative liability under 19(d) of the ISL is an instance where state laws generally and the ISL in particular impose a higher standard.  Section 12(a)(2) of the Securities Act of 1933 by its terms imposes liability only on the seller and its "controlling persons" and describes the reasonable care defense differently.  Directors are often, but not always, "controlling persons," and even if they are, under the federal statute they enjoy a much more generous defense.[7]  In Kirchoff, we noted the difference between federal and Indiana securities law provisions imposing derivative liability on individuals for unlawful sales of securities.  703 N.E.2d at 650-51.  Unlike the Securities Act of 1933, which imposes liability on only the seller and controlling persons, the ISL also provides for derivative liability of "directors" and several others.   The defenses available to these individuals are not uniform.  Employees, broker-dealers, and securities agents of the seller must "materially aid" in the violation before they are liable under section 19(d) of the ISL.  Arnold v. Dirrim, 398 N.E.2d 426, 433-34 (Ind. Ct. App. 1979).  In contrast, Indiana's section 19(d) "imposes absolute liability upon the director of a corporation to purchasers of securities sold in violation of the Securities Act based on his position as a director unless he proves the statutory defense."  Id.  As a result of these important differences in statutory language, unlike claimants under the Securities Act of 1933, purchasers of securities sold in violation of section 19(d) need not prove that a director was a controlling person or participated in the violation in order to establish a claim under the

---

[7] Federal courts have interpreted liability of a "controlling person" to require proof by the plaintiff that the defendant was a "culpable participant" in the unlawful securities sale.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007); Lanza v. Drexel & Co., 479 F.2d 1277, 1299 (2d Cir. 1973) ("The intent of Congress in adding this section . . . was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons."); Carpenter v. Harris, Upham & Co., 594 F.2d 388, 394 (4th Cir. 1979).  In Davis v. Avco Financial Services, Inc., 739 F.2d 1057, 1068 (6th Cir. 1984), the Sixth Circuit concluded that in determining whether a person has exercised due care as an affirmative defense to a section 12(a)(2) Federal 1933 Securities Act violation, the court should consider: (1) the quantum of decisional (planning) and facilitative (promotional) participation . . .(2) access to source data against which the truth or falsity of representations can be tested, (3) relative skill in ferreting out the truth . . ., (4) pecuniary interest in the completion of the transaction, and (5) the existence of a relationship of trust and confidence between the plaintiff and the alleged "seller."

ISL. Because of the differences in the provisions imposing derivative liability under the Securities Act of 1933 and the ISL, decisions under the 1933 Act are not necessarily useful in interpreting section 19(d) of the ISL.

D. *Reasonable Care Under Section 19(d)*

The ISL liability provisions differ in some respects from those found in the Uniform Securities Act of 1956. Kirchoff v. Selby, 703 N.E.2d 644, 650 (Ind. 1998). In this case, however, the relevant Indiana language is identical to the Uniform Securities Act. An individual who is potentially derivatively liable for a violation by a seller of securities bears the "burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."[8] Section 19(d) of Indiana's Act (which applies to buyers and sellers) tracks this language of the Uniform Act verbatim. Accordingly, precedent from other states adopting the Uniform Securities Act is useful.

The plaintiffs rely principally on Robertson v. White, 635 F.Supp. 851 (W.D. Ark. 1986), and Hines v. Data Line Systems, Inc., 787 P.2d 8 (Wash. 1990), in support of their position that directors have an "affirmative duty to inquire to learn whether a corporation has registered its stock and/or disclosed material information to potential investors." Like Lean, the directors in Robertson opposed summary judgment based on the reasonable care defense, including a claim that they relied on the advice of counsel. Id. at 866. The Robertson court rejected this contention, concluding that the liability imposed on directors "is strict, subject only to their showing that they were either unaware that the corporation was engaged in a securities transaction or that the directors reasonably believed that the securities being sold were properly registered or exempt." Id. After reviewing the evidence, Robertson summarized it as establishing:

> (1) that the directors did the best they could, but were unfamiliar with corporation and securities laws; (2) that the directors hired lawyers and accountants to help them, and the lawyers and accountants assured them that everything was all right,

---

[8] This language is from the Civil Liability section, section 410, of the 1956 Uniform Securities Act. This section now appears in the 2002 Uniform Securities Act in section 509. Although there are notable differences between the two sections in other respects, comment 9 of the 2002 Act provides that the lack of knowledge defense is modeled on the 1956 Act. Indiana has adopted the 2002 Act and tracks the relevant portions of section 509 verbatim, but it does not take effect until July 1, 2008. Indiana Uniform Securities Act, P.L. 27-2007 § 23 (to be codified at Ind. Code § 23-19-5-9(d)(2)).

> or at least failed to tell them of the legal hazards of the program; (3) that the state agency never contacted directors personally, or alerted them that they might be liable under the Act, because the Co-op had failed or was failing to do anything which the law requires.

Id. at 867. The defendants admitted the underlying fact that the directors were aware that the corporation was offering demand notes. None of the directors suggested that they believed the notes were registered. Id. Instead, all simply assumed that the transaction conformed to applicable law. Id. The court found this presented no fact issue, and liability was established as a matter of law. Id. The court held that ignorance that this could violate the registration requirement was no defense. Id. Robertson further concluded that a director "cannot delegate responsibility to his lawyer" in order to escape liability for a securities violaton. Id. Hines followed Robertson, holding that a director's ignorance of the facts giving rise to liability is a defense "only to the extent that the director can prove that even by the exercise of reasonable care he would have remained ignorant of the true state of affairs." Hines, 787 P.2d at 18 (citing Robertson, 635 F.Supp. at 865).

Lean contends that the language of these cases interpreting the counterparts of section 19(d) from other states may be taken as imposing too strict an obligation of affirmative action by a director. Relying on Everts v. Holtmann, 667 P.2d 1028, 1035 (Ore. 1983), which applies Oregon's version of the Uniform Securities Act, Lean also argues that the "reasonable care" demanded of a director varies with the director's role in the transaction. We agree with Lean on these two points. Despite the differences between federal and Indiana law in standards of conduct and the persons who may be liable, ultimately, both turn on "reasonable" conduct or belief of the defendant. Federal cases interpreting the 1933 Act hold "outside" directors—those not engaged in the day to day management of the corporation—to a lesser standard of investigation. See Laven v. Flanagan, 695 F.Supp. 800, 812 (D. N.J. 1988); Feit v. Leasco Data Processing Equipment Corp., 332 F.Supp. 544, 577 (E.D. N.Y. 1971) ("What constitutes 'reasonable investigation' and 'a reasonable ground to believe' will vary with the degree of involvement of the individual, his expertise, and his access to the pertinent information and data.") quoted in In re World Com, Inc., 346 F.Supp.2d 628, 675 (S.D. N.Y. 2004). This principle is generally applicable under section 19(d) as well. Reasonable care demands more of a director charged with inves-

9

tigating and presenting a proposal to the board than it does of a director whose only role is to evaluate management's proposal.

The issue raised by Lean's defense, however, is whether it is sufficient for an outside director to assume compliance with all applicable laws with no explicit assurance from anyone, no documentation, and in the face of a number of facts that raise obvious points of inquiry. We think a director can reasonably rely on assertions from counsel and others with expertise as to some legal conclusions, and to that extent we think that some of the language from Robertson overstates the requirement of reasonable care. A director may reasonably rely both on assertions made directly by counsel or on reasonable assurances that competent counsel have reviewed and approved the transaction. In this case, however, like Robertson, there was no evidence of assurance from counsel, whether made directly by counsel or not, that the law applicable to the Abacus acquisition had been examined and that the transaction conformed to all applicable law. Nor is there any evidence that lawyers familiar with securities or financing issues had reviewed the transaction. Under the undisputed facts of this case, the plaintiffs have established that Lean knew, or in the exercise of reasonable care could have known, that the disputed transaction involved the unlawful issuance of unregistered securities. Accordingly, we hold as a matter of law the defense of reasonable care was not established.

Lean, 61, has been a lawyer since 1973 and currently chairs the government relations practice of a large law firm in Toronto, Canada. In early 2000, two directors of GOLI approached Lean about joining GOLI's board. Lean did not receive or ask for anything in writing about GOLI before accepting. On February 18, 2000, the GOLI board elected Lean as a director and also as a member of its audit committee. At that time Lean was issued options to purchase 250,000 shares at $1.25 per share. Lean attended his first board meeting on March 28, 2000, thirty-nine days after being elected a director. A quorum of GOLI's directors, including its chairman, vice-chairman, president, and executive vice-president, were present at that meeting. The company's chief operating officer, corporate secretary, and in-house legal counsel also attended. At the meeting GOLI management presented a proposal to acquire Abacus by issuing GOLI shares to the Abacus shareholders, and the board adopted a resolution approving the proposed transaction.

10

Lean did not recall seeing a prospectus in relation to the GOLI-Abacus transaction, and he does not contend that he believed the securities were registered. Lean concedes that he voted for the transaction at the meeting of GOLI's board of directors on March 28, 2000 and did not ask any questions that would have allowed him to discover that the stock being sold by GOLI was not registered. Lean also presents no evidence that anyone affirmatively represented to the board that the proposed transaction complied with applicable law in general or applicable U.S., Canadian, or state securities laws in particular. With respect to the nondisclosure allegation, Lean concedes that he knew of the issuance of options to him and others and made no inquiry as to the disclosure of these or other items that the plaintiffs contend were material omissions. Lean also knew, or in the exercise of reasonable care would have known, that within the past few weeks the company had issued shares at prices a small fraction of $6.00 per share, but there is no evidence in the record that directly establishes Lean's knowledge of the plaintiffs' valuation of the Abacus shares.

Lean concedes that "there was no discussion" at the March 28, 2000 meeting concerning registration of the securities but contends that there would never be such a discussion at any board meeting. The minutes of the March 28, 2000 meeting indicate that management "presented information to the board regarding Abacus Computer Services" and "answered various questions raised by the board regarding this acquisition." Lean did not recall the specifics of that discussion. Lean testified:

> The natural assumption is, you turn it over to your management and lawyers, and they've done their due diligence on the company, and I'm assuming [the purchasers] did their due diligence on GOLI before they were selling their company and accepting a big chunk of money, being shares.

As for the corporation's failure to register the securities, Lean testified:

> I would assume two things. Number one: management, in their discussions with their counterparts, would disclose everything. I would assume [the purchasers] would ask whatever questions and [the purchasers'] lawyers, as part of the closing, would ask every question, and our lawyers would be required to make disclosures, make representations, and in the normal course, do everything so that they could conclude a transaction properly.

Lean designated the deposition of John McConnell, Ph.D., as an expert on corporate governance issues. McConnell testified that Lean acted with reasonable care as an outside director

11

of GOLI. According to McConnell, the issue of securities registration "would be a detail that would not rise to the level of inquiry by the board of directors" and would not be an issue that would arise in the ordinary course of conducting a board meeting, including a board meeting in which securities were being issued to effectuate an acquisition." McConnell's conclusion is based on his "experience and background and learning." McConnell testified, however, that had a director wanted to know whether the securities of that corporation had been registered, he "could have asked" at a board meeting. McConnell also testified that legal counsel who would have been present at a board meeting would have been "very likely to know whether the securities were registered," and had a director asked, "they would have" answered the question honestly. In McConnell's personal experience, the board of directors "relied on counsel and management, but primarily counsel, to ensure that whatever legal registration requirements were in place would have been followed." Thus, in his opinion, Lean "was not careless in performing his duties as a member of the board of directors" by relying "upon management and counsel to ensure or assure or take appropriate actions to assure that whatever legal statutes were applicable were being followed." McConnell, however, acknowledged that he saw no documents or any indication that any member of GOLI management made any written or oral report in Lean's presence regarding the topic of registration. McConnell also testified that directors review the prospectus prepared by legal counsel, presumably for "untrue statements" that "would have been brought to the attention of the counsel and management" as part of a director's duty. There was no documentation presented to the GOLI board.

### E. *Reasonable Conduct as an Issue of Law or Fact*

Lean argues that summary judgment cannot be affirmed because "reasonable care" under section 19(d) is always a question of fact. We agree that summary judgment is rarely appropriate as to a director's reasonable care. Even where the director concededly took no action and made no inquiry, depending on who had reviewed and presented the transaction, passive reliance may be reasonable. Lean properly cites the statement from Arnold v. Dirrim, 398 N.E.2d 426, 435 (Ind. Ct. App. 1979), that "[r]easonable care is a question of fact which must be determined by taking into account all the circumstances."[9] But in Arnold, the Court of Appeals rejected the di-

---

[9] Lean also cites Taylor v. Perdition Minerals Group, Ltd., 766 P.2d 805 (Kan. 1988) in support of its contention that the issue presented here is not to be resolved by summary judgment. In that case, the

12

rector's argument that he relied on the president of the corporation's representations and judgment and thus satisfied his burden of refuting liability. Id. The court thought that the director's claim "miss[ed] the mark" because it "focuses not on his lack of knowledge about the facts but rather that he was unaware the law attached significance to those facts." Id. The court concluded that "[c]ertainly if the legislature had intended to establish a good faith defense, it would have included such wording in the statute." Id. We agree that, as Robertson held, ignorance of the law is no defense under section 19(d). We also agree that Arnold is correct that reasonable care is ordinarily a fact issue. But in extreme cases conduct may be reasonable or unreasonable as a matter of law just as negligence may be established as a matter of law. C.f. Davison v. Williams, 251 Ind. 448, 456, 242 N.E.2d 101, 105 (1968).

Arnold further explained that "reasonable reliance on information purporting to be made on the authority of an expert may be relevant" to the director's liability. 398 N.E.2d at 435. If Lean had been told by a respectable authority that this transaction complied with legal requirements, it would create a factual issue as to the reasonableness of his unquestioning acceptance. But the undisputed facts of this case are that Lean assumed this transaction complied with applicable law based on no assurance or documentation from anyone. A director who makes this assumption does not meet the standard required by the ISL that in the exercise of reasonable care he could not have known of the facts constituting the violation. Reasonable inquiry, or receipt of reasonable assurance, is one thing. But blind assumption that all is well leaves the investing public in the same position as if there were no directors of the corporation. The statute places liability on the directors and officers to get their attention. If they respond with inattention, they proceed at their own risk. Moreover, in this case, the facts that Lean did know would place a director on notice of the need for some inquiry. There was no identification of the attorneys or others on whom management placed reliance. Indeed, there was no reference to any outside attorney in the designated evidence. A basic understanding of the Abacus acquisition would reveal that GOLI had no operating history, was converting from gold mining to an internet service provider,

---

Kansas Supreme Court, citing Arnold and other cases, ruled that directors need not "materially aid" in the unlawful sale of securities to be held derivatively liable as nonselling parties but must prove the statutory lack of knowledge defense. Id. at 809-11. Thus, the Taylor court reversed the trial court's grant of summary judgment to the defendant directors and remanded the case for trial. Id. at 811. Despite that conclusion, Lean focuses on Taylor's language that whether the directors exercised reasonable care is to be "determined by the trier of fact." Id.

and had issued shares and options at substantially different prices in transactions that were virtually simultaneous with the Abacus transaction. These rudimentary facts bear multiple indicia of a problematic investment. The Indiana Securities Law requires more of a director than a simple assumption that all is well.

## Conclusion

The trial court's grant of partial summary judgment is affirmed. We summarily affirm the Court of Appeals as to issues not addressed in this opinion. <u>See</u> Appellate Rule 58(A).

Shepard, C.J., and Dickson and Rucker, J.J., concur.

Sullivan, J., dissents, believing this appeal should be dismissed as moot because this case has been settled.