

ATTORNEY FOR APPELLANT

James K. Gilday
Gilday & Associates, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Pamela G. Schneeman
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James K. Gilday,

*Appellant-Petitioner/Plaintiff,*

v.

The City of Indianapolis,

*Appellee-Respondent/Defendant*

May 4, 2016

Court of Appeals Case No.
49A02-1506-CT-715

Appeal from the Marion Superior
Court

The Honorable David A. Shaheed,
Judge

Trial Court Cause No.
49D01-1304-CT-15066

**Baker, Judge.**

This case began with a twenty-dollar parking ticket. It proceeded to a $150 default judgment. It ended with the receiver of that ticket, Indianapolis attorney James Gilday, claiming a right to "statutory liquidated damages of not less than $2,500," plus attorney's fees, plus punitive damages. Appellant's App. p. 17. We find that Gilday paid his ticket on time, and that therefore he could not have been required to pay more. In all other respects, we affirm the judgment of the trial court.

## Facts

On October 20, 2012, Indianapolis hosted a 5K charity run, Making Strides Against Breast Cancer. The route went near the Chase Tower, and blocked the entrance to the parking garage attached to it. Gilday was unable to get to his normal parking spot in that garage, and so instead parked at a parking meter on Delaware Street. Believing either that parking was free on Saturdays or that he was entitled to free parking due to his blocked parking space, he did not pay the parking kiosk. After a full day at his office, he returned to his vehicle to find a parking ticket.

The ticket stated the assessed fine at $20, and said "if not paid within 7 days fine increases to $40.00." Appellant's App. p. 74. The back of the ticket explained several ways to pay the fine. Gilday wrote a check for twenty dollars dated October 26, 2012, which is the date Gilday says he mailed it; however, the envelope has since been lost. On the back of the check is a stamp from the bank used by Citation Collection Services (CCS), which noted the payment as

arriving October 31, 2012. An employee of CCS's parent corporation later testified that "CCS uses the JP Morgan Chase Bank received date stamp on the back of checks to determine whether a payment on a parking citation has been timely made." Appellant's App. p. 70.

[4] The City then sent a letter to Gilday on November 16, 2012, which it claims was to assess the $20 late fee. The letter actually says, "Please be advised that the following citation issued for violation of a City ordinance remains unpaid . . . ." Appellant's App. p. 77. Nowhere on this letter is there an indication that CCS considered Gilday's payment to be late, or that a late fee was being assessed. Gilday did not respond to this letter.

[5] The City sent another letter to Gilday on January 29, 2013, informing him that an administrative hearing would be held on March 21 to address his parking ticket. The letter informed him that an administrative judge had the discretion to award the City up to $2,500 per parking violation, but told him that if he paid his citation a week before the hearing date, the hearing would be removed from the court calendar.[1] Gilday did not respond to this letter.

[6] Nor did Gilday attend the March 21, 2013, administrative hearing (the Hearing), at which the administrative judge entered a default judgment against

---

[1] Indianapolis - Marion County Code section 103-74(d)(5) provides that a notice of administrative hearing shall include "The official title . . . of the hearing officer . . . ." Helpfully, this January 29 letter informed Gilday that the title of the hearing officer was "Hearing Officer." Appellant's App. p. 79.

him for $150.[2]  When Gilday received the default judgment in the mail, he wrote a letter to the person listed as "City Representative," Karen White. Unfortunately, City Representative Karen White was not a representative of the City—she was an employee of the parent corporation of CCS, T2 Systems. According to Gilday, he requested several documents involved in the Hearing, but never received a response.

[7]  Gilday filed an action in the trial court to review the administrative decision on April 22, 2013.  His complaint was set out in three counts: first, that the administrative hearing was "illegal"; second, that the City acted unlawfully when it blocked access to his parking garage, thereby "involuntarily extract[ing] money from him either at a prepaid parking meter or by fine"; and third, that the City violated the Driver's Privacy Protection Act (DPPA) by issuing a ticket that had "private information" on it.  Appellant's App. p. 12-18.  He asked the trial court to vacate the $150 default judgment, to have the City refund his original $20 ticket, and for damages and attorney's fees under the DPPA.

[8]  Indianapolis - Marion County Code (Revised Code) section 103-79 requires a party petitioning for review of an administrative decision to secure a certified copy of the administrative hearing to be filed in the court within fifteen days of the decision, or else suffer a dismissal of the petition.  Thus, the quest for the certified record of the Hearing began.

---

[2] We will discuss the authority the City claims it has to institute this penalty below.

[9] Gilday first wrote to the Hearing Officer to request the record, but he received no response. He then requested, and was granted, a thirty-day extension to obtain the record. Thirty days later, Gilday still had not received a record, and so filed for a protective order against the possibility that the City would try to dismiss the case. The trial court granted his motion, providing that Gilday "shall not be prejudiced by his failure to obtain and file a Record of Hearing as required under the Revised Code." Appellant's App. p. 154.

[10] On July 25, 2013, the City's attorney sent Gilday an email with some documents relating to the Hearing, and told him, "I am also working on getting a transcript from the hearing that day." Appellant's App. p. 242. This effort was unavailing, and before anyone had secured a certified record of the Hearing, the City moved for summary judgment on May 7, 2014. Included in the designated evidence were the ticket, the letters notifying Gilday of the Hearing, and the Hearing Officer's order. The City then wrote to Gilday, "I am informed that when a person who has been issued a parking citation fails to appear at an administrative hearing, the only record is an audio recording of that person's name being called and an acknowledgement that the person is not present." Appellant's App. p. 359. The City told Gilday that he could obtain the audio recording of someone saying his name by paying T2 Systems $75.

[11] The parties began wrangling over who should bear this cost; eventually, the audio of the Hearing was produced, and Gilday transcribed the audio. Gilday's summary judgment response and cross-motion for summary judgment argued that he did not yet have a properly certified record as specified in the Revised

Code. The City had T2 Systems prepare a certified hearing record, which included a copy of the ticket, the letters sent to Gilday, the Motion for Judgment on the Evidence presented at the Hearing, and the Hearing Officer's order. Gilday objected to this version of the record, however, because it did not itself contain a certified transcription of the Hearing. The trial court disagreed, believing it had enough of a record to render a decision.

[12] After a March 19, 2015, hearing, the trial court granted the City's motion for summary judgment and denied Gilday's cross-motion for summary judgment. The trial court accepted the City's argument that a ticket should be considered "paid" not when mailed, but rather when stamped by CCS. Therefore, the trial court found that there was no genuine dispute over the facts that Gilday was late, that he was notified of the administrative hearing, and that the $150 penalty was appropriate. Gilday now appeals.

## Discussion and Decision

[13] We will divide our analysis according to the claims made by Gilday in his complaint. Namely, we will discuss whether summary judgment was properly granted regarding 1) the $150 fine, 2) the original ticket, 3) Gilday's federal claims, and 4) Gilday's request for sanctions against the City.

[14] When reviewing the grant of a summary judgment motion, we apply the same standard applicable to the trial court. *Lean v. Reed*, 876 N.E.2d 1104, 1107 (Ind. 2007). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  Ind. Trial Rule 56(C).  Where there are cross-motions for summary judgment, we will consider each motion separately to determine if the moving party was entitled to summary judgment as a matter of law.  *Diversified Invs., LLC v. U.S. Bank, NA,* 838 N.E.2d 536, 539 (Ind. Ct. App. 2005).

## I.  The Administrative Hearing

As a society that tends to celebrate progress, we hold milestones with a certain reverence.  We commemorate the Pilgrims who settled on these shores; we take special note of mankind's first steps on the moon; and today, we observe that this is the first parking ticket to be successfully appealed to our court.[3]  As a CCS employee testified, "Had Mr. Gilday contacted CCS before the administrative hearing held on March 21, 2013, it is highly likely that CCS would have excused the late fee assessed to him."  Appellant's App. p. 71.  Since the City tends to dismiss or excuse tickets that are protested, few cases proceed beyond the administrative level.  Therefore, we will take a moment to review the parking ticket scheme before analyzing its application to Gilday.

Revised Code section 621-227 makes it unlawful for a person to leave a vehicle at a metered spot that has expired.  The only exception is when the meter is not operating properly and the person reports it as such within twenty-four hours.

---

[3] More ambitious litigants have previously asked appellate courts to invalidate entire parking ordinances. *Andrews v. City of Marion*, 221 Ind. 422, 47 N.E.2d 968 (1943); *Greenwood v. City of Washington*, 230 Ind. 375, 102 N.E.2d 642 (1952); *Mitsch v. City of Hammond*, 234 Ind. 285, 126 N.E.2d 247 (1955); *City of Evansville v. Walker*, 162 Ind. App. 121, 318 N.E.2d 388 (1974).

[17]    Revised Code section 103-3 provides the following:

>    (a)    Whenever in any chapter, article, division or section of this Code, or of any ordinances amendatory thereof or supplemental thereto:
>
>>    (1)    *The doing of any act*, or the omission to do any act or to perform any duty, *is declared to be a violation of this Code*, or of any such amendatory or supplemental ordinance, or of any provision thereof, or is declared to be unlawful; *and*
>>
>>    (2)    *If there shall be no fine or penalty otherwise specifically prescribed or declared for any such violation*, or for doing or for omitting to do any such act or to perform any such duty;
>
>    any person found to have committed any such violation shall be fined, by way of a penalty therefor, an amount not exceeding any limitation under IC 36-1-3-8 for each such violation, act or omission

(emphases added).  That statute sets a maximum limit of $2,500 that any political unit may levy as a fine for the violation of most ordinances.  Ind. Code § 36-1-3-8(a)(10)(A).

[18]    The code does, however, have a fine specifically prescribed for the violation of parking at an expired meter: the civil penalty is $20.  Revised Code § 103-52. Anyone receiving a citation is required to appear before the ordinance violations bureau to admit or deny the violation within seven days.  *Id.* § 103-57.  In this context "payment of the designated civil penalty within seven days

of the date of the issuance of the citation . . . shall be deemed an admission of the violation," which also satisfies the duty to appear. *Id.* If a violation is "admitted" more than seven days after the citation is issued, the fine either doubles or increases by $25, whichever is lower. *Id.* § 103-53.

[19] But even if there is a fine specifically prescribed for a violation, an offender might find herself subject to the general penalty of up to $2,500. "The civil penalties specified in this article shall apply only to violations admitted . . . and shall be considered offers in compromise. If administrative or judicial proceedings are initiated for such violation, the specific penalties for such violation or the general penalties of the Code shall be applicable to the violation." *Id.* § 103-60. Administrative or judicial proceedings may be brought if the person served with a citation does any of the following three things: 1) makes an appearance but denies the violation; 2) fails to appear within ten days of the citation; or 3) fails to pay the specified civil penalty within seven days after admitting the violation. *Id.* § 103-74(a).

[20] The Revised Code does not specify when a fine is considered "paid." At the March 19, 2015, hearing, Gilday analogized the issue to the payment of taxes, and noted that Indiana's Department of Revenue considers a document to be timely filed if there is reasonable evidence that the document was deposited in the mail on or before the due date. Ind. Code § 6-8.1-6-3(a)(1). The City countered with a different interpretation: "our position is that the City is entitled to determine when a payment is received. . . . And it's our position that the City is entitled to determine when payment is made." Tr. p. 30-31.

[21]     As an issue of first impression, we hold that payment is made on a parking ticket when the payor deposits the payment in the mail. The issue is too important to allow the City to determine for itself when it believes a payment was made: any delay on the City's end could result in a 12,400% increase in the fine assessed for a parking violation. We believe that the ordinary citizen would believe that she was paying a ticket at the moment she sent the payment, not when the City determines she paid. If the term is ambiguous, the ambiguity should accrue to the advantage of the citizen, who could not predict which of multiple meanings the City intended, and to the disadvantage of the City that drafted the ordinance.

[22]     The City argues that the term "paid" is not ambiguous, and that it means "receiving pay." Webster's New Twentieth Century Unabridged Dictionary 1285 (2d ed. 1983). But the City gets the word "paid" from the ticket it wrote to Gilday, not from the Revised Code. The law must be as it is written in the duly-adopted ordinances, not as it is portrayed in a parking officer's ticket. The ordinances either refer to "payment," Revised Code § 103-57, or a person who "fails to pay." *Id.* at § 103-59; 103-74. The definition of "payment" is "an act, or the action or process, of paying." The New Shorter Oxford English Dictionary 2130 (1993). "Pay" is defined variously as "give" or "hand over or transfer." *Id.* at 2129. The City is perhaps correct that there is no ambiguity here—but only in that the ordinances unambiguously support Gilday's position.

[23]     The City has misplaced Gilday's envelope, which might have contained a postmark noting the date it was placed in the mail. As the record stands, the

only evidence offered to establish the date Gilday placed his payment in the mail is the date he placed on the check, October 26, 2012, and his testimony that he mailed it on that day. The City has put forth no evidence contradicting this, and therefore this factual issue is not genuinely disputed—Gilday made his payment six days after receiving the citation.

[24] Because his payment was made within seven days of the citation, his payment constituted an admission. Revised Code § 103-57. Because he admitted within seven days of the citation, there was no legal authority by which he could be assessed the late fee. *Id.* § 103-53. Since the payment also satisfied the duty to appear within ten days, the City had no legal authority to initiate an administrative hearing. *Id.* § 103-74(a).

[25] In sum, Gilday paid his fine within seven days, and cannot be held liable for any additional payment. Therefore, we reverse the trial court's grant of summary judgment on this issue, and find that summary judgment should have been granted to Gilday on this issue.

## II.   The Original Ticket

[26] Gilday offers a number of arguments for why he should not have had to pay the original ticket. He points out that it is unlawful for a person to knowingly fail to comply with a lawful order of a law enforcement officer. Ind. Code § 9-21-8-1. A police officer directed him away from his normal parking spot. He believes, therefore, that he had a legal excuse to not pay for metered parking.

[27] Gilday is wrong. He might have had an argument if a policer officer ordered him to park and leave his car at an expired meter. This is not what happened. Gilday was unable to get to his parking spot, and so he—in an act of free will—parked in a metered spot without paying. The Revised Code, clearly and unambiguously, declares this unlawful and sets the penalty at $20. Gilday's argument to the contrary is unavailing.

## III. Driver's Privacy Protection Act

[28] The DPPA prohibits the disclosure of personal information from a motor vehicle record in certain circumstances. 18 U.S.C. § 2721(a). This applies to "a State department of motor vehicles," but also prevents disclosure by "an authorized recipient of personal information" from the department. *Id.* § 2721(c). Personal information is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address, telephone number, and medical or disability information." *Id.* § 2725(3).

[29] There is no physical evidence in the record to indicate that any such information was disclosed; but Gilday testified that the ticket he found on his car had his name and address, and claims that the City destroyed that portion of the ticket. For the purposes of summary judgment, we will assume that the ticket had Gilday's name and address.

[30] Even if we do so, we find that the City did not violate the DPPA. The statute contains multiple exceptions to the general prohibition against disclosure. One

exception is "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State or local court or agency or before any self-regulatory body, including the service of process. . . ." 18 U.S.C. § 2721(b)(4). The Seventh Circuit, in a case factually indistinguishable from the present one, explained that law enforcement has good reasons to disclose some personal information on a parking ticket, and that "[t]he balance between law enforcement and privacy favors allowing discreet disclosure of limited information of credible value to law enforcement, since the potential harm of such disclosure is negligible but the benefits nonnegligible." *Senne v. Village of Palatine*, 784 F.3d 444, 448 (7th Cir. 2015) (finding that a parking ticket did not violate the DPPA, even where ticket included person's name, date of birth, sex, height, weight, driver's license number, and address), *cert. denied*, 136 S.Ct. 419 (2015).

[31] For all the reasons that the disclosures in the *Senne* case were "for use in connection with" a judicial proceeding, so were the alleged disclosures in this case. Therefore, even granting the truth of everything Gilday claims, there was no violation of the DPPA, and summary judgment was properly granted to the City on this issue.

## IV. Sanctions

[32] Gilday argues that the City should have been sanctioned by the trial court. He points to the difficulty of obtaining the record, and of the various deficiencies of the various versions of the record he obtained. He argues that the City should

have produced the record, and that there was never a proper record because the City did not create a certified transcript of the audio recording it provided.

[33] Gilday's argument is unavailing.

> We assign the selection of an appropriate sanction for a discovery violation to the trial court's sound discretion. Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation. We therefore review a trial court's sanction only for an abuse of its discretion.

*Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012) (citations omitted).

[34] We certainly sympathize with Gilday's struggle to get a proper record, and we believe the trial court was correct in not dismissing his claim for lack of a record that he could not obtain. But we cannot find any behavior on the part of the City that a trial court would be compelled to sanction.

[35] The strongest allegation Gilday makes against the City is that it failed to comply with a June 14, 2014, court order to produce a record of the Hearing—but the City did produce the audio recording, which comports with the description of the administrative hearing contained in Revised Code section 103-78(5). The trial court was certainly within its discretion to find that sanctions were not appropriate.

# Conclusion

[36]     The undisputed evidence shows that Gilday paid his fine within seven days; therefore, the City could not add a late fee, hold an administrative hearing regarding his violation, or seek a default judgment against him. Gilday is not correct that he had a legal excuse to park at the meter, or that the City violated the Driver's Privacy Protection Act. Finally, the trial court was within its discretion to not sanction the City.

[37]     We reverse the trial court's grant of summary judgment regarding the default judgment, and remand with instructions to enter summary judgment in favor of Gilday on this count. In all other respects, the judgment of the trial court is affirmed.

May, J., and Brown, J., concur.