Nos. 126,522
126,523

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KANSAS GOVERNMENTAL ETHICS COMMISSION,
*Appellee*,

v.

FABIAN SHEPARD and
CHERYL REYNOLDS,
*Appellants.*

SYLLABUS BY THE COURT

1.

The Kansas Governmental Ethics Commission is statutorily authorized to investigate any matter to which the Kansas Campaign Finance Act applies, regardless of whether a complaint has been filed.

2.

The Kansas Campaign Finance Act does not limit the Commission's subpoena power to known or suspected violators. It can subpoena witnesses or records when it reasonably suspects that someone violated the Act and can require the production of any other documents or records which it deems relevant or material to the investigation.

3.

Under the Kansas Public Speech Protection Act, a motion to strike is filed after service of a complaint. A First Amendment privilege is premature when no complaint has been filed, no affirmative defense has been raised, and no discovery order has been issued.

1

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Oral argument held July 9, 2024. Opinion filed September 6, 2024. Affirmed.

*T. Chet Compton* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellants.

*Kaitlyn R. Bull-Stewart*, general counsel, of Kansas Governmental Ethics Commission, for appellee.

Before GREEN, P.J., HILL and GARDNER, JJ.

GARDNER, J.: When investigating whether certain campaign contributions violated the Kansas Campaign Finance Act (KCFA), K.S.A. 25-4142 et seq., the Kansas Governmental Ethics Commission issued administrative subpoenas to Fabian Shepard and Cheryl Reynolds (Appellants). When Appellants had not responded to the subpoenas after five months, the Commission filed applications with the district court to enforce them. Appellants then unsuccessfully moved to strike the enforcement applications under the Kansas Public Speech Protection Act (the Act), K.S.A. 2022 Supp. 60-5320, alleging the subpoenas violated their rights under the First Amendment to the United States Constitution. Now, on interlocutory appeal, Appellants claim the district court erred by finding the Commission met its burden to prove that it would likely prevail on its requests to enforce the subpoenas. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2022, the Kansas Governmental Ethics Commission issued subpoenas to Appellants and several other individuals to produce communications and documents related to the Commission's investigation about campaign contributions to and from various political committees or parties. The subpoenas allege that Appellants and several others volunteered as members of three central committees when these committees made

2

allegedly illegal contributions to the Kansas Republican Party, in violation of the KCFA. Shepard was the chairperson for the Johnson County central committee and Reynolds was the chairperson and treasurer for the Shawnee County central committee during the relevant investigatory period.

While acting in these roles, Appellants allegedly participated in or obtained information related to an alleged passthrough scheme. The subpoenas allege that the passthrough scheme involves a separate party who made two large contributions to two political action committees (PACs), which then contributed the money to the three central committees. When the central committees received those contributions, they allegedly agreed to transfer them to the Kansas Republican Party upon request. The subpoenas also listed several provisions of the KCFA and said that the central committees illegally contributed to the Kansas Republican Party for some other person or entity. The subpoenas also suggest that several parties made and accepted contributions in amounts exceeding statutory contributions limits, including a $5,000 limit imposed under K.S.A. 25-4153(d).

Appellants did not respond to the subpoenas, so after several months the Commission moved the district court to enforce them and compel the production of the information requested. Appellants then moved to strike the Commission's applications under the Act, asserting that the subpoenas stifled their exercise of their First Amendment rights.

The district court held a hearing on Appellants' motions to strike and later denied them. The district court found that Appellants had made a prima facie showing under the first prong of the test—that the subpoenas targeted communications that concerned issues protected under the First Amendment. See *T&T Financial of Kansas City v. Taylor*, No. 117,624, 2017 WL 6546634, at *4 (Kan. App. 2017) (unpublished opinion) (statutory two-part test for deciding Act motions to strike first requires movant to make prima facie

3

showing that the claim against which the motion is based concerns a party's exercise of right of free speech, right to petition, or right of association). The district court found the communications occurred "among individuals connected by common political interests" and concerned Appellants' First Amendment rights.

The court then addressed the second prong of the test—whether the Commission could establish a likelihood that the court would grant its application to enforce the administrative subpoenas. See K.S.A. 2022 Supp. 60-5320(d). The district court found the Commission had shown reasonable suspicion that a campaign finance violation had occurred, and that the statute did not require a showing that the recipients of the subpoenas, here Appellants, had violated the statute. See K.S.A. 25-4158. The district court also found that Appellants' assertion of a First Amendment privilege was premature.

Next, the district court analyzed whether the subpoenas requested information "reasonably relevant" to the alleged violations, as required under the KCFA subsection authorizing this kind of investigatory subpoena, K.S.A. 25-4158(d). It found the subpoenas sought two categories of information. The district court found the first category impermissibly overbroad because although the requests were limited by time, they were not limited by subject matter. The district court explained that if Appellants later objected to the breadth of this provision, the court would sustain an overbreadth objection unless the provision were modified. The district court thus concluded that it "would not compel a response to [the first] request . . . as written." But the district court found a second category of requests, seeking communications limited to a specific subject matter, "much more tailored to information . . . reasonably relevant to the violations alleged." The district court thus held that it would likely enforce five of six requests in this second category. As a result, it denied Appellants' motions to strike, finding substantial competent evidence showed a likelihood that the Commission would prevail on its motions to enforce the subpoenas.

4

Finally, the district court denied the Commission's motion for attorney fees because it found no showing that Appellants had filed their motions frivolously or solely to delay the Commission's investigation. See K.S.A. 2022 Supp. 60-5320(g) ("If the court finds that the motion to strike is frivolous or solely intended to cause delay, the court shall award to the responding party reasonable attorney fees and costs related to the motion."). The district court did not address Appellants' requests for attorney fees, as K.S.A. 2022 Supp. 60-5320(g) permits such an award only when a motion to strike is successful.

Appellants filed timely interlocutory appeals under K.S.A. 2022 Supp. 60-5320(f)(2). Our motions panel granted Appellants' unopposed motion to consolidate these cases on appeal.

THE DISTRICT COURT PROPERLY DENIED APPELLANTS' MOTIONS TO STRIKE

In determining whether the district court erred by denying Appellants' motions to strike the subpoenas, we begin by reviewing the relevant statutes.

*Overview of the Act*

The Kansas Legislature adopted the Kansas Public Speech Protection Act, K.S.A. 60-5320, in 2016. L. 2016, ch. 58, §1. Sometimes referred to as an anti-SLAPP statute, the Act is intended to prevent meritless lawsuits that inhibit free speech, known as SLAPPs, or "'strategic lawsuits against public participation.'" *Taylor*, 2017 WL 6546634, at *3. The purpose of the Act is to "encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while . . . protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2022

5

Supp. 60-5320(b). The Act is "applied and construed liberally to effectuate its general purposes." K.S.A. 2022 Supp. 60-5320(k).

The Act "provides a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit." *Taylor*, 2017 WL 6546634, at *4. The Act broadly defines a "claim" as "any lawsuit, cause of action, claim, cross-claim, counterclaim or other judicial pleading or filing requesting relief." K.S.A. 2022 Supp. 60-5320(c)(1). It allows a party to move to strike a claim if the claim "is based on, relates to or is in response to [that] party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2022 Supp. 60-5320(d). The movant must make a prima facie showing that one or more of the claims asserted in the filing concerns the exercise of freedom of speech, freedom to petition, or freedom of association. If the moving party meets that burden, the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case. K.S.A. 2022 Supp. 60-5320(d).

Appellants argue that the district court erred by denying their motions to strike under the Act. They assert that the Commission did not sufficiently prove that the district court would grant its applications to enforce the subpoenas because: (1) the subpoenas do not limit the requests for information to items reasonably relevant to the alleged violations and thus exceed the statutory authority granted the Commission under K.S.A. 25-4158(d); (2) the information requested is constitutionally protected under the First Amendment; and (3) the Commission did not show that it reasonably suspected that a violation of the KCFA had occurred.

This court exercises unlimited review of a district court's order granting or denying a motion to strike under the Act. See *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 137, 499 P.3d 1136 (2021). Similarly, to the extent this analysis requires statutory

interpretation, our review is unlimited. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019); *Doe*, 61 Kan. App. 2d at 137.

A.     *Step One of the Anti-SLAPP Test:  Appellants' Prima Facie Showing*

The district court looked to K.S.A. 2022 Supp. 60-5320(c)(1)'s definition of a "claim" as including a "filing requesting relief," and found that the Commission's application to enforce an administrative subpoena was a claim. The Commission did not cross-appeal the district court's findings that the Act applies to the Commission's action to enforce its subpoenas or that Appellants successfully carried their burden of establishing a prima facie case under the Act. Those holdings are thus not subject to review. *Williams v. GEICO General Ins. Co.*, 311 Kan, 78, 80, 456 P.3d 222 (2020); see K.S.A. 60-2103(h).

B.     *Step Two of the Anti-SLAPP Test:  The Merits of the Commission's Claim*

The burden thus shifts to the party asserting the claim, the Commission, to establish a likelihood of prevailing on the merits by coming forward with substantial competent evidence to establish a prima facie case. K.S.A. 2022 Supp. 60-5320(d). The district court found that "prevailing on the claim" in the context of this request to enforce a pre-complaint subpoena meant "that the [Commission] must establish a likelihood that the Court would grant its application to enforce the administrative subpoena . . . supported by substantial competent evidence of the elements necessary to compel enforcement of the subpoena." Both parties agree with the district court's framing of the issue, but Appellants disagree with its conclusion that the Commission met its burden. We thus consider whether substantial competent evidence shows the Commission would likely succeed on its requests to enforce the pre-complaint subpoenas. See K.S.A. 2022 Supp. 60-5320(d).

7

1. *Some Overbroad Requests Do Not Compel the Court to Grant the Motion to Strike.*

The district court found that one of the two categories of information requested by the subpoenas was impermissibly overbroad—not reasonably relevant to the alleged campaign finance violations—because the Commission did not limit it by subject matter. Appellants argue for the first time on appeal that the district court should have found that the impermissible broadness of some requests in the subpoenas rendered the subpoenas completely unenforceable, so the court should have granted its motion to strike. We generally do not consider matters not raised before the district court, absent an argument supporting our application of a recognized exception. See *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). And appellants argue no such exception here. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (listing three recognized exceptions). Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). In *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), and *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced, and that litigants who failed to comply with this rule risked a ruling that the issue is improperly briefed and will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). This new issue is thus unpreserved.

Nor do Appellants cite any legal authority for this "all or nothing" claim, so we may dismiss it on that basis as well. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (dismissing for failure to support point with pertinent authority). We find guidance in K.S.A. 2022 Supp. 60-5320(d), which states: "If the responding party meets the burden, the court shall deny the motion." The district court, having found that the Commission met its burden, complied with this statutory directive by denying the

8

motion to strike. The Commission established a likelihood of succeeding on a substantial portion of its requests to enforce the administrative subpoenas. That other requests may later be found objectionable or privileged does not defeat the Commission's showing at this stage of the proceedings.

Appellants also point to *Caranchini v. Peck*, 355 F. Supp. 3d 1052 (D. Kan. 2018), where the federal district court granted some motions to strike and denied others. The court later awarded fees under K.S.A. 2016 Supp. 60-5320(g) for the claims on which it granted the motions to strike. *Caranchini v. Peck*, No. 18-2249-CM-TJJ, 2019 WL 4168801 (unpublished opinion). But that case contradicts their argument that some overbroad requests compel the court to grant the motion to strike. And even if the district court could have done as the *Caranchini* court did, it chose not to, and that is the decision we must review. Appellants cite no precedent compelling the district court to grant its motion to strike when it finds some requests in a subpoena may later be found overbroad.

We also find this argument premature, as the district court has not yet decided whether to enforce or modify the subpoenas. True, as Appellants note, some cases have granted anti-SLAPP motions to strike when the court found a claim error could not be remedied by a modification. See, e.g., *Microsoft Corp. v. M. Media*, No. CV-17-347-MWF (AJWx), 2018 WL 5094969, at *7 (C.D. Cal. 2018) (unpublished opinion) (granting anti-SLAPP motion to strike because claim was barred by litigation privilege so leave to amend would be futile); *Grant & Eisenhofer, P.A. v. Brown*, No. CV-5968 PSG (PJWx), 2017 WL 6343506, at *6-7 (C.D. Cal. 2017) (unpublished opinion) (same). But in such cases, a pleading had been filed setting forth claims before any motion to strike was made, as is the norm for anti-SLAPP motions, and the courts found any modification or amendment of the claims would be futile.

Not so here. This anti-SLAPP motion to strike is unusual and problematic because no pleading has yet been filed. Like all anti-SLAPP statutes, the Act is intended to

9

prevent meritless lawsuits that chill individuals' exercise of their rights of free speech, association, and to petition. *Doe*, 61 Kan. App. 2d at 145. Consistently, the Act contemplates that a motion to strike is filed *after* service of a complaint, not before: "The motion to strike made under this subsection may be filed within 60 days of the service of the most recent complaint or, in the court's discretion, at any later time upon terms it deems proper." K.S.A. 2022 Supp. 60-5320(d). Nothing in the statute permits an earlier motion to strike, as Appellants filed here. To the contrary, the rest of the statute contemplates that a pleading has been filed. See, e.g., K.S.A. 2022 Supp. 60-5320(d) (allowing affidavits to shore up factual contentions in petition); K.S.A. 2022 Supp. 60-5320(e)(2) (referring to post-pleading matters—"all discovery, motions or other pending hearings shall be stayed upon the filing of the motion to strike").

In contrast, the Commission is statutorily authorized to investigate any matter to which the KCFA applies, regardless of whether a complaint has been filed. K.S.A. 25-4158(c) ("The commission may investigate, or cause to be investigated, any matter required to be reported upon by any person under the provisions of the campaign finance act, or any matter to which the campaign finance act applies irrespective of whether a complaint has been filed in relation thereto.").

Yet the Commission does not claim on appeal that Appellants' motions to strike were filed too early, see K.S.A. 2022 Supp. 60-5320(d), so we do not rule on that basis. Still, under the unique pre-complaint status of Appellants' motions to strike, the district court was not determining the likely failure or success of a claim in a complaint, as is typical in anti-SLAPP litigation. It was merely determining the likelihood that it would grant the Commission's application to enforce its administrative pre-complaint subpoenas. The district court implicitly found that the overbreadth in the Commission's first requests for information did not affect the rest of the subpoenas and could later be corrected through modification. And unlike in the California cases above, Appellants

10

have not shown that modification or amendment would be futile. We are thus not persuaded by those California cases or other post-complaint cases.

As the Commission correctly notes, when deciding whether to enforce a subpoena, a district court generally has discretion to modify a subpoena. See K.S.A. 2022 Supp. 60-245(c)(3)(A)(iii), (iv) (authorizing quashing or modification of subpoena to protect witnesses from misuses of subpoena powers). As our Supreme Court stated in *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights*, 229 Kan. 15, 27, 622 P.2d 124 (1981):

> "'[A] district court has power to modify a subpoena and thus remove any objectionable features from it while preserving the remainder. We know of no reason why a district court should not, a fortiori, have the same power with respect to a subpoena duces tecum issued by [the Kansas Commission on Civil Rights] and we so hold.' [Citations omitted.]"

Similarly, the district court here has the power to modify a subpoena duces tecum issued by the Commission. The district court may thus decide to modify or enforce only part of the subpoenas when addressing this issue in a future proceeding. But for now, we dismiss Appellants' argument—that the Commission had to prove that the subpoenas are enforceable as written to survive Appellants' motions to strike under the Act—as unpreserved, unsupported, and premature.

2. *Appellants' Asserted First Amendment Privilege Does Not Defeat the Commission's Claim.*

Appellants next argue that the information demanded in the Commission's subpoenas is barred by their First Amendment privilege, so the court should have granted their motions to strike. The Commission counters that this claim is premature.

Appellants contend that the Commission must come forward with substantial competent evidence not only to establish the elements of its various claims but also to

11

defeat Appellants' defenses to those claims—their First Amendment privilege. In making this assertion, Appellants rely primarily on California law, citing *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 108, 64 Cal. Rptr. 3d 467 (2007), where the court stated that in considering whether plaintiff has met its evidentiary burden, it must consider pleadings and evidence. But *McGarry* held that the court cannot weigh the evidence; the court must simply determine whether the plaintiff's evidence would, if credited, be sufficient to meet the burden of proof, analogous to the standard applicable to a motion for a directed verdict. 154 Cal. App. 4th at 108.

California law generally requires that a court assesses the defendant's evidence only to determine whether it defeats the plaintiff's claim *as a matter of law*:

> "Because the Court concludes that Defendants' conduct constitutes protected activity for purposes of the anti-SLAPP statute, G&E must establish 'a probability that [it] will prevail on the claim.' *Simpson Strong-Tie*, 49 Cal. 4th at 21. In assessing this probability, the Court does not 'weigh credibility' or 'evaluate the weight of the evidence,' but instead 'accept[s] as true all evidence favorable to the plaintiff and assess[es] the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.' *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989 (2011) (quoting *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699-700 [2007])." *Grant & Eisenhofer, P.A. v. Brown*, No. CV-17-5968-PSG (PJWx), 2017 WL 6343506, at *5 (C.D. Cal. 2017) (unpublished opinion).

See also *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.*, 59 Cal. App. 5th 995, 1003, 273 Cal. Rptr. 3d 831 (2021) ("[W]e accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. [*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal. 4th 260, 269, fn. 3, 46 Cal. Rptr. 3d 638, 139 P.3d 30.]").

As for Kansas law, the Act states: "In making its determination, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." K.S.A. 2022 Supp. 60-5320(d). Kansas law is largely undeveloped on this point. Cf. *Kemmerly v. Wichita Eagle*, No. 124,220, 2022 WL 1436399, at *3 (Kan. App. 2022) (unpublished opinion) ("[T]o avoid the motions to strike after the defendants met their initial burden of showing the claims concerned their exercise of free speech, [the plaintiff] needed to present to the district court substantial competent evidence that he would prevail on his . . . claim."). Kansas cases have not often applied this anti-SLAPP statute in analyzing a defense, raised to defeat the plaintiff's evidentiary burden. See *Doe*, 61 Kan. App. 2d at 148-49 (finding district court, in considering second prong of anti-SLAPP test, improperly considered motion to dismiss because it is not a "pleading" as defined in K.S.A. 2020 Supp. 60-207). Our cases have thus not clarified whether the court's review of an answer or affidavits stating a defense is merely to determine whether the defendant's evidence defeats the opposing party's evidence *as a matter of law*. But here, because Appellants moved to strike before any complaint was filed, the district court had no pleadings to consider. No party points us to any affidavits either, so the district court could not apply K.S.A. 2022 Supp. 60-5320(d) (requiring court to consider pleadings and supporting and opposing affidavits stating facts upon which liability or defense is based).

Appropriately, the district court did not wade into the depths of the standard of proof for this second prong; it rejected Appellants' First Amendment privilege as procedurally premature. First, it found that Appellants never asserted a First Amendment privilege in response to the subpoenas because Appellants did not respond to the subpoenas at all, choosing instead to seek relief under the Act. Second, the district court found that despite the lengthy opportunity for the parties to do so, the parties had not conferred about any objections or raised any non-Act objections, such as overbreadth, to the court.

13

Third, the district court addressed the Appellants' primary authority on this issue—*Grandbouche v. Clancy*, 825 F.2d 1463, 1466-67 (10th Cir. 1987)—and found it inapplicable. *Grandbouche* referenced a balancing test federal courts use when the subject of a discovery order claims a First Amendment privilege not to disclose certain information:

> "In *Silkwood,* this court announced that when the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure. *Silkwood,* 563 F.2d at 438. Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. *See id.* The trial court must also determine the validity of the claimed First Amendment privilege. Only after examining all of these factors should the court decide whether the privilege must be overborne by the need for the requested information." 825 F.2d at 1466-67.

The district court found that because it had not yet ordered Appellants to comply with the subpoenas, this test could not be easily applied. It thus made no attempt to apply the *Grandbouche* factors.

Even so, Appellants ask this court to apply the *Grandbouche* factors for the first time on appeal. Appellants contend that *Grandbouche* applies "[w]hen a First Amendment privilege is invoked in response to a subpoena," and that all four factors weigh in their favor, so the Commission failed to show a likelihood of defeating their First Amendment privilege. The Commission counters that we should not apply the *Grandbouche* factors, but if we do, the factors favor it, on balance. But the Commission mainly agrees with the district court that weighing Appellants' alleged First Amendment privilege is premature.

We agree, as well, that weighing Appellants' alleged First Amendment privilege is premature. First, *Grandbouche* established that "*when the subject of a discovery order*

14

claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure." (Emphasis added.) 825 F.2d at 1466. Appellants are not yet subject to any discovery order, nor are they named in any lawsuit, so they have not raised an affirmative defense of a First Amendment privilege. We thus decline Appellants' invitation to apply *Grandbouche* more broadly and to weigh the four factors ourselves—any such weighing is legally unsupported and is procedurally premature.

Second, the *Grandbouche* factors are heavily fact-based, and the alleged facts are largely disputed. We are a court of review, not a fact-finding court, and we cannot resolve this issue in the first instance. To resolve this issue on the merits would require us to consider facts outside the scant record but "[f]act-finding is simply not the role of appellate courts." *State v. Nelson*, 291 Kan. 475, 488, 243 P.3d 343 (2010) (citing *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 [2009]). We thus dismiss as premature Appellants' assertion that the information demanded in the Commission's subpoenas is barred by their First Amendment privilege. Cf. *State v. Stuart*, No. 124,489, 2024 WL 2229961, at *8-9 (Kan. App. 2024) (unpublished opinion) (dismissing equal protection claim, finding additional factual findings necessary to consider constitutional claim). We find no error in the district court's findings on this issue.

### 3. *We Find Reasonable Suspicion of KCFA Violations*

Finally, Appellants assert that the Commission failed to allege facts showing a violation under the KCFA. Appellants argue that the Commission "has not described the basis for th[e] [alleged] violation. It simply concludes that if a transfer occurred in the context of mere suggestions by political actors, there must be a violation." Appellants also challenge the factual and legal findings in the subpoenas as conclusory and overly broad, and they claim the subpoenas must be issued only to those suspected of having violated the KCFA.

15

*Reasonable suspicion that Appellants violated the KCFA is unnecessary.*

We address this latter assertion first. Appellants claim and the Commission disputes that to meet the Commission's burden of proof under the second step of the Act analysis, the subpoenas must be issued only to persons suspected of having violated the KCFA.

K.S.A. 25-4158(d)(1) is written broadly. It grants the Commission the authority to issue investigatory subpoenas and to require the production of certain documents and communications upon "a reasonable suspicion that a violation of the campaign finance act has occurred":

> "After a preliminary investigation of any matter reported to the commission pursuant to subsection (c), and upon specific written findings of fact and conclusions of law by the commission that there is a reasonable suspicion that a violation of the campaign finance act has occurred, the commission or any officer designated by the commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the commission deems relevant or material to the investigation. . . . Subpoenas duces tecum shall be limited to items reasonably relevant to such alleged violations. Upon the request of any person subpoenaed to appear and give testimony or to produce books, papers or documents, the commission shall provide a copy of the written findings of facts and conclusions of laws relating to the alleged violation committed by such person." K.S.A. 25-4158(d)(1).

Contrary to Appellants' argument, the statute does not limit the Commission's subpoena power to individuals accused of committing crimes—it can subpoena witnesses or records when it reasonably suspects that someone violated the KCFA and can require the production of any other documents or records which it deems relevant or material to the investigation.

16

True, the last sentence of this statute requires the Commission, upon request, to provide a suspected violator a copy of the facts and laws related to their violation. Here, as the district court found, a copy was given to Appellants, regardless of whether they were suspected violators. But that sentence does not control the rest of the paragraph, which is broadly stated in plain terms. The Legislature has given the Commission the power to investigate any matter to which the KCFA applies and even before a complaint has been filed. K.S.A. 25-4158(c). And the statute does not require the Commission to limit its investigation to known or suspected violators.

*The subpoenas requested reasonably relevant items.*

Still, the Commission had to provide substantial competent evidence that it met the statutory requirements, including that it limited its requests for information "to items reasonably relevant to [the] alleged violations." K.S.A. 25-4158(d)(1). Appellants assert that the Commission's requests failed this restriction and that "a court may not enforce a subpoena that exceeds the authority of the administrative agency issuing the subpoena." *State ex rel. Brant v. Bank of America*, 272 Kan. 182, 185, 31 P.3d 952 (2001).

The district court found that the first category of information requested in the Commission's subpoenas was impermissibly overbroad because the requests were not limited by subject matter. Those requests were not reasonably relevant to the alleged violations. Neither party challenges that ruling, so we do not address it.

Appellants challenge the district court's finding that the second category of information requested in the Commission's subpoenas largely meets the "reasonably relevant" requirement of this statute. That second category requests:

17

"At any time, all communications and shared documents, including but not limited to email, text, and social media messages, not otherwise produced that discuss or concern any of the following:

- "Any and all transfers/contributions to The Right Way Kansas PAC for Economic Growth or Lift Up Kansas PAC from the Republican State Leadership Committee;
- "Transfers/contributions of $5,000 each to the Johnson County Republican Central Committee, Shawnee County Republican Central Committee, Sedgwick County Republican Central Committee, Kansas Republican Party, and Republican House Campaign Committee, from The Right Way Kansas PAC for Economic Growth and Lift Up Kansas PAC, occurring on or about September 2020;
- "Transfers/contributions to the Johnson County Republican Central Committee of $5,000 from Ty Masterson for Kansas Senate on or about October 12, 2020, and $5,000 from Dan Hawkins for Kansas House on or about October 14, 2020;
- "Transfers/contributions from the Johnson County Republican Central Committee of $4,500 to the Republican House Campaign Committee on or about October 19, 2020, and $9,000 to the Kansas Republican Party on or about September 29, 2020;
- "Transfers/contributions from the Johnson County Republican Central Committee of $5,000 to Mike Thompson for Kansas Senate on or about October 14, 2020, $4,000 to Beverly Gossage for Kansas Senate on or about October 14, 2020, and $1,000 to Beverly Gossage for Kansas Senate on or about October 17, 2020;
- "Any other transfers/contributions or expenditure, known to be provided to the Johnson County Republican Central Committee with the intention or communicated desire for the funds to be subsequently given to another specific person, committee, or entity."

Appellants assert that this category, like the first, is impermissibly overbroad. But other than citing K.S.A. 25-4158's "reasonably relevant" standard, Appellants do not provide a legal basis for their argument.

18

The district court properly considered the breadth of the subpoenas and made factual findings which conflict with Appellants' assertions on appeal. The district court found that the first five bullet points in this second category are appropriately limited by time and subject matter—only the sixth is objectionable. Based on our independent analysis, we reach the same result. The district court correctly found that "for the most part, the second category of information contains requests for information that, at least on their face, appear to be enforceable and would likely be enforced."

*Factual and legal findings support a reasonable suspicion of a violation.*

Lastly, we address Appellants' assertion that the Commission failed in its burden to show a reasonable suspicion of a violation of the KCFA. See K.S.A. 25-4158(d)(1). Appellants contend that the Commission's theories about "giving in the name of another" and "a known pass-through scheme" are novel and speculative.

In its response to Appellants' motions to strike, the Commission explained that it suspected two KCFA violations: one for giving a contribution in the name of another, contrary to K.S.A. 25-4154, and one for making and accepting contributions in excess of the contribution limit provided in K.S.A. 25-4153(d).

The Commission alleged that the Republican State Leadership Committee made two $37,500 payments to two PACs, and then several entities distributed these funds in facially improper ways and in statutorily excessive amounts:

"On September 23, 2020, and September 25, 2020, two nearly inactive PACs (Lift Up Kansas PAC and The Right Way PAC for Economic Growth, collectively 'the passthrough PACs') gave $10,000 each to three central committees: the Johnson County Republican Central Committee, the Shawnee County Republican Central Committee, and

19

the Sedgwick County Republican Central Committee, (collectively 'the central committees'). Within days most or all of these funds were contributed to the state Republican Party. On the same day the passthrough PACs gave to the central committees, the passthrough PACs also gave $5,000 to the state Republican Party. The statutory limit was $5,000. K.S.A. [25-]4153(d).

"Given the consistency of the timing of all contributions at each stage including the nearly identical timing of funds passing through the central committees, the similar funding for both PACs, the substantial inactivity of the PACs, the quick turnaround of assets from one fund to the next, and the ultimate disposition of the assets in the state party committee that would have been an illegal overcontribution if directly contributed by the RSLC or the PACs individually, the scheme is apparent."

After reviewing this information, the additional information in the parties' briefs, and the subpoenas and their attached findings and conclusions, the district court found that "the existence, amounts, and timing of the contributions set forth in the [Commission's] findings and conclusions give rise to a reasonable suspicion that a campaign finance violation occurred."

Appellants do not convincingly challenge this finding. As the district court found, a reasonable suspicion, in the criminal context, is a low bar to meet. See Black's Law Dictionary 1740 (11th ed. 2019) (defining reasonable suspicion as "[a] particularized and objective basis, supported by specific and articulable facts, for suspecting a person of criminal activity"); *State v. Glover*, 308 Kan. 590, 601, 422 P.3d 64 (2018), *rev'd and remanded* 589 U.S. 376, 140 S. Ct. 1183, 206 L. Ed. 2d 412 (2020) (finding reasonable suspicion a "low burden" in the criminal context). The reasonable suspicion standard sets a similarly low bar here, in this civil context.

Having reviewed the Commission's factual allegations enumerated in its findings of fact and conclusions of law attached to the subpoenas duces tecum, we agree that they establish a reasonable suspicion that a campaign finance violation occurred. They set

forth a particularized and objective basis for believing that a violation of the KCFA has occurred. The Commission thus provided a sufficient factual and legal basis to support its requests to enforce the subpoenas, as the district court found in its well-reasoned and well-written decision.

## APPELLANTS ARE NOT ENTITLED TO ATTORNEY FEES

Appellants challenge the district court's denial of their motion for attorney fees under K.S.A. 2022 Supp. 60-5320(g) in the event we reverse. See K.S.A. 2022 Supp. 60-5320(g) (The court shall award attorney fees to the defending party, "upon a determination that the moving party has prevailed on its motion to strike."). Because we are affirming the district court's denial of Appellants' motion to strike, this request is moot.

Appellants' brief also states that they will move for appellate attorney fees under Kansas Supreme Court Rule 7.07(b) (2024 Kan. S. Ct. R. at 52). But no motion for appellate attorney fees has been filed. See Rule 7.07 (b)(2) ("A motion for attorney fees on appeal must be made under Rule 5.01 and be filed no later than 14 days after oral argument.") We thus award no appellate attorney fees.

Affirmed.

21